No. 19,652.

HELEN F. RYAN and DACOTAH S. RYAN, *Appellees*, v. WILLIAM J. CULLEN, *Appellant*, and THE GARRETT LUMBER COMPANY et al., *Appellees*.

SYLLABUS BY THE COURT.

1. WILLS—*Life Estate—Power in Devisee to Dispose of Fee—Interest of Devisee Conveyed by Sheriff's Deed under Execution Sale.* A testator made a will bequeathing life estates to his six sons and daughters with power in each at their direction to terminate their life estate and dispose of their respective shares of the fee. Three of the sons became financially involved and submitted to judgment in favor of their mother, and on execution the sheriff sold the interests of the three debtors and these were bought in by the mother and conveyed by her to a daughter, a sister of the three debtors. On an issue as to what was sold by the sheriff, it is held that the sheriff merely sold the terminable life estates of the three debtors.

2. SAME—*Disposition of Fee by Devisee—Life Estate Terminated.* After the above proceedings transpired, the three sons conveyed their shares of the fee to the wife of one of their number, *Held*, that this was an exercise of the power of disposition conferred upon them by their father's will and had the effect of terminating their life estates and vested their shares of the fee in their grantee absolutely.

3. SAME—*Life Estate—Power of Disposition—Sale on Execution.* Where by the terms of a will the power and discretion to terminate a life estate is vested in a beneficiary, this power is personal; and it is not property which may be subjected to forced sale on execution.

4. DEED—*Cancellation—Decree Sustained by Findings of Fact.* A decree cancelling a deed and requiring a reconveyance of whatever unde-

termined interests were the consideration therefor, which decree is in harmony with undisputed findings of fact pertaining thereto, will not be disturbed on appeal.

Appeal from Leavenworth district court; WILLIAM I. STUART, judge *pro tem.* Opinion filed July 10, 1915. Affirmed.

*Nathan Cree,* of Kansas City, for the appellant.

*Thomas J. White,* of Kansas City, *W. W. Hooper,* and *Lee Bond,* both of Leavenworth, for the appellees.

The opinion of the court was delivered by

DAWSON, J.: This is a case of considerable complexity, but thanks to the comprehensive statement of Mr. Justice West when it was here before (*Ryan v. Cullen,* 89 Kan. 879, 133 Pac. 430), it will require no extended recital now. The litigation grows out of the estate of Matthew Ryan, sr., a Leavenworth citizen of considerable property who died in 1893 leaving six children, Matthew, jr., Kate, Mary, Thomas, Jeptha and Ethan. One provision of the will of Ryan, sr., reads:

"5. I give and bequeath to my children, Matthew Ryan, Jr., Kate V. Sheedy, Jeptha D. Ryan, Mary Ryan, Thomas C. Ryan and Ethan B. Ryan, each one-sixth of the balance of my estate for their lives, with the remainder to the heirs of their bodies, respectively, with the power in each of my said children to control and dispose of his or her share of my estate during his or her life, as to each shall seem proper."

After these children had reached maturity, the sons, Jeptha, Thomas and Ethan, met with financial reverses and owed their mother $45,000. They submitted to judgments in favor of their mother, Mary Ryan, and their interest in their father's estate was sold by the sheriff and bought by their mother. The crux of this case is mainly on the question as to what was sold by the sheriff to their mother. The mother conveyed her interests thus purchased to her daughter, the defendant, Mary (Ryan) Loftus. Afterwards the plaintiff, Helen J. Ryan, secured a conveyance from her husband, Thomas, and from Jeptha, of their interests.

The other plaintiff, Dacotah S. Ryan, is the widow of Matthew, jr., and claims through him and by a grant from her children. Thus Helen claims an undivided two-sixths of the property, and Dacotah claims one-sixth, and their action against Mary is for ejectment and partition. The other de-

fendant, William J. Cullen, claims title through tax deeds and a quitclaim deed from Mary and her husband.

Another issue in the case involved misrepresentations on the part of Mary and her husband, whereby Dacotah was induced to convey her interest in the property and in turn received a quitclaim deed to certain property from Mary and her husband. Dacotah prayed for the cancellation of these deeds. The abstract sets out some twenty-eight pages of findings of fact and voluminous conclusions of law based thereon.

From a judgment in favor of plaintiffs, the defendant, William J. Cullen, appeals. But the range of our review is limited as no error is assigned on the exhaustive findings of fact.

Appellant's first principal contention is that plaintiff Helen had no title, because the entire interest of Thomas and Jeptha, through whom she claimed, had been sold by the sheriff to Mary Ryan, their mother, and that the mother had conveyed that interest to Mary (Ryan) Loftus, who in turn had conveyed it to William J. Cullen.

What did the sheriff sell? The will of Ryan, sr., had bequeathed to each of his children an undivided one-sixth life interest in his estate "with remainder to the heirs of their bodies, respectively, with the power in each of my said children to control and dispose of his or her share of my estate during his or her life as to each shall seem proper." Appellant contends that when Thomas, Jeptha and Ethan confessed judgment in their mother's suits against them they had an agreement with their mother that she should have not only their life estates but the entire fee of their shares. And doubtless this was an issue raised by the pleadings, but such contention has no support in the findings of fact made by the district court. As the case comes here, we must hold that the interests of Mary Ryan's sons, which she purchased at the sheriff's sale, were no more than a stranger creditor could have caused to be sold in judicial proceedings wholly *in invitum*.

Coming now to the next phase of this same proposition, it will be observed that the will of Ryan, sr., gave the sons the power to control and dispose of their shares "as to each shall seem proper." In other words, each child of Matthew Ryan, sr., was given power by his father's will to terminate the life estate bequeathed to him and to control and dispose of his share of

the inheritance. That each son could do so was casually recognized by this court when this case was here before. This question must be set at rest now. The life estates of the Ryan sons were only contingent life estates. The fair import of their father's will was that those life estates might be determined by appropriate action on the part of the beneficiaries, and this action they were free to take "as to each shall seem proper." After their contingent life estates were taken from them by judgments and sheriff's sale, Thomas and Jeptha chose to exercise this privilege conferred by the will of their father to terminate their life estates and part with the fee, and this they did by conveyances to plaintiff Helen J. Ryan. During the pendency of the partition proceedings in the district court Ethan B. Ryan also terminated the life estate bequeathed to him by his father by exercising the power conferred on him by his father's will; he conveyed his share of the fee to Helen F. Ryan. Mary has also exercised this privilege by terminating her own life estate and conveying it to Cullen. (*Silvers et al. v. Canary,* 109 Ind. 267; 9 N. E. 904, and cases there cited.)

Counsel for appellant stoutly contends that the entire interests and not the mere life estates of Thomas, Jeptha and Ethan were sold by the sheriff on execution, and that consequently they had nothing to convey in their later deeds to Helen J. Ryan. After failing to maintain this contention on the issues of fact, he now insists on the same point as a matter of law.

Certain excerpts from textbooks and decisions are cited by counsel to support that contention, and the case of *Moody v. Tedder,* 16 S. Car. 557, is one of those. We have read this case carefully. It is distinguishable from the one before us. There the person holding the life estate had likewise the power to terminate it and convey the fee. She did convey "all her interest and life estate." The court properly gave potency and value to the word "interest" as well as to the other terms of the grant. Moreover, there were many equities in that case and an acquiescence for fourteen years.

The case of *Hobbs v. Smith,* 15 Ohio St. 419, lends some support to appellant's argument. The headnote reads:

"A devised land to his son for ninety-nine years, without impeachment for waste, with remainder to the son's children, should he have any. The will provided: That the son should support himself, and, if he ever had a family, should support it also, from the land, and invest the balance

Ryan v. Cullen.

of the rents and profits in improvements thereon; that the land should not be taken in execution for payment of his debts; that he should have power to dispose of it by will, not, however, to defeat the purpose of the will; and that he should have full power to sell, reinvest, and to resell at pleasure, and without accounting to any person or court for the proceeds of purchase money. Held: 1. That a sale of the land on execution against the son, and a deed therefor by the sheriff, pass, at least, a present legal estate, and right of possession to the purchaser. 2. That the estate and right so passed are not defeated or divested by a subsequent conveyance in fee by the son, and it does not enable the purchaser under him to recover possession from the sheriff's vendor."

In the body of the opinion, however, it was said:

"This will is certainly a legal curiosity. The precise sense and meaning of much of its language is obscure, and some of it seems to be without sense or meaning at all. Its provisions are apparently conflicting, and they give rise to many curious questions of law. . . . The general object of the testator seems to have been, to give to the devisee an absolute *ownership* of the land, and yet to shield it from the *payment of his debts*. This is simply impossible. The law makes what a man *owns*— whether held by legal or equitable title—liable to the payment of his debts, unless it be property specially exempted. No legal acumen or skill can evade this policy of the law, and as often as it is attempted it must result in one of two things—either in the devisee taking *nothing* by the will, or in leaving what he does take liable for the payment of his debts. The *liability* attaches to the *ownership*, and it is beyond the power of any draftsman to invent a form of devise, or conveyance, that shall separate them. . . . The power given in the will is one coupled with an interest. When that interest is divested, either by act of the party or by law, the power, as to *that interest*, is exhausted, and ceases to exist; and then becomes only a power as to the interest of *other parties*. If the interest with which the power is coupled be the *whole interest*, then, of course, the whole power *ceases to exist*, upon the divestment of the interest. A grant of power to sell one's own property is a mere *nullity*, because the power exists without the grant, and no disposition of that interest made by law, can be defeated by any subsequent exercise of the power.

"What estate and interest, then, did the devisee have in this land, at the time of the sheriff's sale? He had the legal title, and right of possession, for the term of ninety-nine years, subject to be defeated only by his *own voluntary act*, and he was in actual possession. So much it is certain he had. What he had beyond the term of ninety-nine years, we need not now inquire. It will be time enough to decide that question after ninety-nine years shall have elapsed, and when his children, if he ever have any, shall claim to take the remainder in fee, as devisees, or, if there are no children, whenever the heirs of the testator shall claim it as a reversion descending to them." (pp. 424, 425.)

It will be observed that even in the foregoing case it is not contended that the sheriff sold the entire fee.

Another case cited by appellant, *Cressey v. Cressey,* 215 Mass. 65, 102 N. E. 314, is not pertinent. It contains no question of life estate, nor of the power to convey, nor any other proposition analogous to the one at bar.

Neither do appellant's quotations from textbooks and cyclopedias go as far as argued by appellant.

The better doctrine is that upon execution the sheriff can not sell the personal power and discretion bestowed upon the debtor by the testator's will. This personal power is not a chose in action to be confiscated or abridged at the instance of a judgment creditor by forced sale. There seems to be no end of authorities to support this view, and among these is *Jones v. Clifton,* 101 U. S. 225, 25 L. Ed. 908, where a husband had conveyed certain property to his wife, reserving to himself "the power to revoke the grant and assignment, in whole or in part, and to transfer the property to any uses he might appoint, and to such person or persons as he might designate, and to cause such uses to spring or shift as he might declare." (p. 226.)     Later, financial misfortunes overtook the husband and his assignee in bankruptcy sought to set aside the conveyances to the wife. This neither the federal circuit court nor the supreme court would permit. Mr. Justice Field said:

"Should he [the husband] revoke the settlements, the property would revert to him, and of course, be liable for his debts; and should he exercise the power of appointment for the benefit of others, the estate appointed would be liable in equity for his debts.

"The title to the land and policies passed by the deeds; a power only was reserved. That power is not an interest in the property which can be transferred to another, or sold on execution, or devised by will. The grantor could, indeed, exercise the power either by deed or will, but he could not vest the power in any other person to be thus executed. Nor is the power a chose in action. It did not, therefore, in our judgment, constitute assets of the bankrupt which passed to his assignee." (p. 230.)

Suppose a creditor of the wife had procured a judgment against her, and on execution had sold the property. Would that have cut off the husband's reserved power to terminate the estate he had conferred upon her, and prevent his selling the property? We think not.

A very instructive and analogous case is *McCullough's*

*Adm'r v. Anderson,* 90 Ky. 126, 13 S. W. 353, 7 L. R. A. 839, where the headnote reads:

"Where a testator creates a life estate in one with remainder to another, and at the same time gives the life tenant the power to defeat the remainder by disposing of the property by deed or will, the remainder will take effect if there has been no disposition of the property by the life tenant. The power of disposition does not convert the life estate into a fee unless it is exercised."

### After reviewing the authorities the court said:

"In view of these authorities it is maintained that although the wife, Harriet, in this case was given a life estate, there was coupled with it a power to dispose of the entire estate for her own use, or that of another, at any time during her life, or to pass by her will at her death; and as no greater dominion could have been exercised over it by the devisor if he were living, the fee must necessarily have passed to the wife, and such was the intention of the testator. The argument certainly strikes one with much force; for if the dominion over the estate is such that it can be used, conveyed, devised or otherwise disposed of by the donee without restriction or limitation, the power over it is as great as any that could have been exercised by the grantor or devisor in whom the title to the estate was originally vested. We preceive, however, no reason why such a power may not be conferred if it appears from a consideration of the whole will that the intention of the testator was not to create a fee in the first taker. The right of absolute dominion and control, with the power to sell or devise, would, unexplained, pass the absolute estate.

"In this case the testator proceeds, in the first place, to give to his wife, Harriet, *during her life,* all his estate, real and personal, with the full power to dispose of the whole of it as she pleases. Now, if he had intended to vest the wife with the fee, or to give her the absolute estate, without any limitation, it could have been readily expressed, and there would have been no necessity for carving a life estate out of the fee, and then conferring upon the life tenant the power to pass the fee by deed or will, if she desired to do so. The provision of the will giving the wife this power shows that upon its exercise alone could the wife pass the fee, so as to defeat the objects of the testator's bounty, designated to take the remainder. Such was his plain intention. He described the estate in express terms that the wife was to have, and that was a *life estate;* but as she might need the entire estate, or desire to make some other disposition of it than that I have made, I will vest in you the power to destroy the rights of those in remainder, and you may dispose of the whole of it, but failing to do so, the remainder will pass to those who are named to take at your death. The provisions of the will were plain and easily understood. The testator had placed it within the power of his wife to destroy the devise made to his own kindred, and by will or deed give it to those of her own blood." (p. 133.)

Ryan v. Cullen.

One of the headnotes of *Cramton v. Rutledge et al.*, 157 Ala. 141, 47 South. 214, reads:

"Where a life tenant is authorized to sell and dispose of such portions of a testator's estate as the life tenant may think best, either at public or private sale, and upon such terms as the life tenant may deem advisable, the life tenant can not delegate the execution of the power to the probate court, and can not substitute the judgment of that tribunal for hers in making the sale; hence, a sale in partition under the decree of the probate court at the instance of the life tenant can not be considered as an execution of the power." (Headnote, ¶ 1.)

In the opinion it was said:

"The equity of the bill in this cause was determined on former appeal—*Rutledge v. Cramton*, 150 Ala. 275, 43 South. 822. It was then held that the partition proceedings in the probate court for the sale of the land here in controversy, upon the petition of Mrs. Bell, who took a life estate under the will of her husband, and to whom was committed the authorization 'to sell and dispose of such portions of my (testator's) estate as she may think best, either at public or private sale and upon such terms as she may deem advisable,' was not an execution of the power conferred by the will. The holding seems to have been predicated upon certain statutes. Independent of and aside from these statutes, the conclusion reached was clearly correct, for the obvious reason that the power conferred reposed in Mrs. Bell a personal trust and confidence to exercise her own judgment or discretion, which could be discharged only by her personally. In other words, she could not delegate the execution of the power to the probate court to become for her, in her stead, the vendor of the property. There could be no substitution of the judgment of that tribunal for her's in determining the manner of exposing the property to sale and the terms of sale, which had been expressly confided to her.—*Chambers v. Tulane*, 9 N. J. Eq. 146; *Naundorf v. Schumann*, 41 N. J. Eq. 14, 2 Atl. 609; *Lanning v. Sisters of St. Frances*, 35 N. J. Eq. 392, 400; *Saunders v. Webber*, 39 Cal. 287; *Suarez v. Pumpelly*, 2 Sandf. Ch. (N. Y.) 336; *Conklin v. Egerton's Administrator*, 21 Wend. (N. Y.) 430; *Whitlock v. Washburn*, 62 Hun. 369, 17 N. Y. Supp. 60; *John S. Wills v. Cowper and Parker*, 2 Ohio, 124." (p. 147.)

(See, also, Tiedeman on Real Property, 3d ed., ch. XVI, and particularly §§ 420, 421.) In view of the terms of the will of Ryan, sr., the findings of fact, and the law as indicated above, we are bound to hold that the judgment of the district court in behalf of Helen F. Ryan must be affirmed.

Turning to the interest of Dacotah, widow of Matthew, jr., she was induced to convey her interest in the property in controversy to Mary through misrepresentation and without consideration. Such are the findings of fact which control this

review.   Hence, and very properly, the district court set aside the deed from Dacotah to Mary; however, at the same time requiring Dacotah to reconvey whatever hazy and undefined interests, if any, she may have received by reason of a quitclaim deed from Mary and her husband and William J. Cullen.

There is a hint in appellees' brief that William J. Cullen is a fictitious personage, but this is unimportant in view of our conclusions.

This case discloses no material error and the judgment is affirmed.