No. 47,244

Charles Agustus Wallace, Mary Christina Wallace Phillips, Edith Catherine Wallace Lee, Margaret Alice Wallace Pentzer, Sadie Morris Wallace Settles, Carrie Goldina Wallace Thomson, Robert William Wallace, Glen Elder Wallace, Ruth May Wallace Allen, Vernon D. Wallace, and Vera Agnes Wallace Stubblefield, *Appellants*, v. C. H. Magie and Lourena Magie, *Appellees*, v. The Healy Cooperative Elevator Company, *Appellee*.

(522 P. 2d 989)

Opinion filed April 6, 1974.

*Everett L. Baker*, of Lyons, argued the cause and was on the brief for the appellants.

*Douglas C. Spencer*, of Oakley, argued the cause, and *Corwin C. Spencer*

and *James A. Spencer*, also of Oakley, were with him on the brief for the appellees, C. H. Magie and Lourena Magie.

*Gary R. Hathaway* and *K. Mike Kimball*, of Hathaway & Kimball, of Ulysses, were on the brief for the appellee, the Healy Cooperative Elevator Company.

The opinion of the court was delivered by

OWSLEY, J.: William R. Wallace, owner of the record title to the real property involved in this action, died on November 22, 1916, a resident of the State of Oregon. His will was admitted to probate and record in Lane County, Kansas, on June 28, 1919. He was survived by his wife, Della, who died in 1966, and twelve children, eleven of whom survive and are the appellants and plaintiffs in this action. They claim title to the property as remaindermen under the will of William R. Wallace.

Della, who subsequently married Henry Schweitzer, became indebted to the third party defendant, Healy Cooperative Elevator Company. Healy, through attachment and execution, acquired title to the subject property in 1939. In 1943, Healy conveyed the property by general warranty deed to the defendants, C. H. Magie and Lourena Magie, who remain in possession.

We must first decide the interest in the property devised to Della Wallace by the will of William R. Wallace. If we decide she acquired a fee title in the property in line with the holding of the trial court this case should be affirmed and title quieted in the Magies. If we conclude Della acquired only a life estate, the trial court's judgment cannot be affirmed unless we find the Magies have acquired title by open, exclusive and continuous possession either under a claim knowingly adverse or under a belief of ownership for a period of fifteen years. (K. S. A. 60-503.)

The case was submitted to the trial court on the pleadings and a stipulation of facts. The following parts of the stipulation are pertinent to this appeal:

"4. William R. Wallace died testate on November 22, 1916, in Gilliam County, Oregon, leaving as his heirs-at-law, his children, the plaintiffs herein, Harry Lester Wallace, his son, now deceased, and Della Wallace, his widow, who subsequently married Henry Schweitzer.

"5. William R. Wallace left a last will and testament which was admitted to probate in the Probate Court of Lane County, Kansas, on June 28, 1919, a true copy of which is attached hereto and made a part hereof, having been marked 'Joint Exhibit 1'.

.  .  .  .  .  .  .  .  .  .  .  .  .

"7. In Case No. 2785, 'The Healy Cooperative Elevator Company, Plaintiff, vs. Della Schweitzer and Henry Schweitzer', District Court of Lane County,

Kansas, the plaintiff, The Healy Cooperative Elevator Company, obtained an *in rem* judgment against the defendants, Della Schweitzer and Henry Schweitzer, and that the aforesaid real estate was duly and lawfully attached and sold *to satisfy said judgment* to The Healy Cooperative Elevator Company, the third-party defendant herein, pursuant to an order of sale dated December 12, 1938, for sum of $869.85; which sale was duly made by the Sheriff of Lane County, Kansas, on January 16, 1939, and confirmed by the court on January 23, 1939.

. . . . . . . . . . . . .

"9. No redemption was made within the 18-month period allowed by the court in said Case No. 2785, and a Sheriff's deed was duly executed under date of July 17, 1940, filed for record July 22, 1940, and recorded in Book 30, page 590, office of the Register of Deeds, Lane County, Kansas, a copy of which deed is attached hereto, and made a part hereof, having been marked 'Joint Exhibit 2'.

"10. C. H. Magie and Lourena Magie, defendants and third-party plaintiffs herein, are the successors in title to the aforesaid real estate, and hold title to the same by virtue of one certain general warranty deed, dated March 3, 1943, filed for record May 25, 1943, and recorded in Book 31, page 206, office of the Register of Deeds of Lane County, Kansas, a copy of which deed is attached hereto and made a part hereof, having been marked 'Joint Exhibit 3'.

"11. The consideration paid for said real estate by C. H. Magie and Lourena Magie to The Healy Cooperative Elevator Company was $1,250.00.

. . . . . . . . . . . . .

"14. On March 25, 1944, C. H. Magie and Lourena Magie granted a perpetual easement and right-of-way to the Kansas-Nebraska Natural Gas Company, Inc. for the purpose of constructing, installing, maintaining, renewing, replacing and operating pipelines and appurtenances thereto for the transportation of gas, gasoline, oil, petroleum products and other fluids or any thereof, and telegraph and telephone lines in connection with such pipelines in, under, upon and through said real estate. This instrument was filed for record May 11, 1944, and recorded in Misc. Record 13, page 573, office of the Register of Deeds of Lane County, Kansas.

"15. On March 24, 1949, C. H. Magie and Lourena Magie granted a real estate mortgage covering this said real estate to the Kellogg Sales Company to secure payment of a promissory note for $9,000.00, with interest thereon at the rate of 4% per annum, and due and payable December 31, 1949. This instrument was filed for record April 4, 1949, and recorded in Mortgage Record 32, page 218, Office of the Register of Deeds of Lane County, Kansas. A mortgage registration fee of $22.50 was paid. On January 18, 1950, said mortgage was released of record.

"16. On March 29, 1951, C. H. Magie and Lourena Magie granted an oil and gas lease to J. E. Beymer on this said real estate for a primary term of 10 years from that date. The lease contained the usual ⅛th royalty provision and for annual delay rentals of $1.00 per acre. It was filed of record April 4, 1951, and recorded in Misc. Record 15, page 463, office of the Register of Deeds, Lane County, Kansas.

"17. On November 8, 1954, C. H. Magie and Lourena Magie granted an oil and gas lease to Joe E. Denham on this said real estate for a primary term

of 10 years. The lease contained the usual ⅛th royalty provision and for annual delay rentals of $1.00 per acre. It was filed of record December 1, 1954, and recorded in Misc. Record 21, page 17, office of the Register of Deeds, Lane County, Kansas. On December 8, 1958, said oil and gas lease was released of record.

"18. On July 31, 1962, C. H. Magie and Lourena Magie granted an oil and gas lease to the Clayton Oil Company, Denver, Colorado, on the afore-mentioned real estate for a primary term of 10 years. The lease contains the usual ⅛th royalty provision and for annual delay rental of $1.00 per acre. It was filed of record October 11, 1962, and recorded in Misc. Record 25, page 203, office of the Register of Deeds, Lane County, Kansas. Delay rentals were never paid and lease terminated.

"19. During the year 1946, the defendants, C. H. and Lourena Magie sold the house located on the aforesaid real estate for the sum of $250.00.

"20. During the year 1965, the defendants, C. H. and Lourena Magie sold rock taken from the aforesaid real estate to Lane County, Kansas, for the sum of $338.00.

. . . . . . . . . . . . . . . ..1

"25. The defendants, C. H. Magie and Lourena Magie, have made improve-ments on the aforesaid real estate in the total amount of $750.00.

"26. The defendants, C. H. Magie and Lourena Magie, have been in open, continuous and exclusive possession of the aforesaid real estate from March 3, 1943, until plaintiffs filed their petition in this court on August 13, 1971."

## Joint Exhibit 1, being the last will and testament of William R. Wallace, reads as follows:

"I, William Wallace, being of sound mind, made this my last will and testament:

"I give, bequeath, and devise my estate and property, to my beloved wife, Della Wallace, as follows:

"The Southwest Quarter (¼) of Sec. 18, Township 16, Range 29 West sixth (6th) P.M.

Southeast Quarter (¼) of Sec. 13, Township 16, Range 30, West of the Sixth (6th) P.M. Ave.

Northeast Quarter (¼) of Sec. 13, Township 16, South of range 30, West of the Sixth Principal Meridian all in Lane County, Kansas.

"I bequeath to my eldest son Harry Lester Wallace the amount of One Dollar,

"I bequeath to my second son Charles Agustus Wallace the amount of One Dollar,

"I bequeath to my eldest daughter Mary Christine Wallace the amount of One Dollar,

"I appoint Harry Lester Wallace, my oldest son, as guardian for the minor children and minor heirs, without bonds.

"The minor children and minor heirs are as follows.

"Edith Catherine Wallace Lucas (married) age 19. Margaret Alice Wallace, age 17.

"Sadie Morris Wallace age 14. Carrie Goldina Wallace 12. Robert William Wallace age 11.

"Glen Elder Wallace Age 8. Ruth May Wallace age 7. Vernon D. Wallace age 5.

"Vera Agnes Wallace age 2.

"Said Della Wallace is to have and to hold said property in her own right and name during her natural life, then said property to be divided equally amoung [sic] said heirs as she sees fit.

"Its further provided that this property can be exchanged or sold by the joint consent of my beloved wife, Della Wallace and our son, Harry Lester Wallace.

"In Witness Whereof, I, the above-named testator, have hereunto set my hand and seal, this 20th day of November in the year of our Lord 1916.

"/s/ William R. Wallace (Seal)"

As stated, the trial court found the will created a fee title in Della Wallace. The basic rule of construction applicable to wills is found in *In re Estate of Freshour*, 185 Kan. 434, 345 P. 2d 689. We stated:

". . . In construing a will the court must put itself as nearly as possible in the situation of the testator when he made the will, and from a consideration of that situation and from the language used in every part of the will, determine as best it can the purpose of the testator and the intentions he endeavored to convey by the language used. . . ." (p. 438.)

Although the will is not expertly drawn and there are provisions thereof which might be considered ambiguous, we find no ambiguity in connection with the issue we must decide. Applying the foregoing rule of construction we have no hesitancy in concluding the will created a life estate in Della Wallace with a power of disposition. Many cases could be cited from which an analogy could be drawn in support of this position. Nothing would be added to the law of this state to do so, but reference is made to an article entitled "Expressions of Intent to Create Fees, Life Estates and Powers of Disposition in Kansas," by William R. Scott, 3 Washburn Law Journal 5. On page 7 thereof, the author sets forth samples of limitations which have been construed to create a life estate despite prior language which, if considered alone, might be broad enough to create a fee. In this will, after devising the property to Della Wallace, the testator limited the estate by providing she was to hold the property in her own name and right during her natural life and then divide it among the named heirs as she saw fit. He also provided for the right to sell the property with consent of a son. Both of these provisions are contrary to an intention to devise a fee title.

Defendant Healy proceeded to attach and sell the land as though

Della Wallace (Schweitzer) owned a fee title. K. S. A. 60-2416 provides that an attaching creditor acquires only the interest of its debtor in the property attached. (Also, see *Howard v. Howard,* 149 Kan. 223, 86 P. 2d 510.) Since we have determined Della Wallace (Schweitzer) owned only a life estate in the property, a life estate is all Healy could acquire, so limiting the interest conveyed to C. H. Magie and Lourena Magie. The Magies, however, claim they and their predecessors in interest have been in open, exclusive and continuous possession of the real estate for more fifteen years under claim of title and belief of ownership. The effectiveness of their claim involves a construction of K. S. A. 60-503.

K. S. A. 60-503, which amended G. S. 1949, 60-304 *Fourth,* became effective January 1, 1964, and we first considered its effect in *Stark v. Stanhope,* 206 Kan. 428, 480 P. 2d 72. This case pointed out that the former statute required the possession to be notorious and hostile while the new statute eliminated the element of hostility as essential to adverse possession. The case also recognized that in lieu of an adverse holding the claim may be based on "belief of ownership." The ramifications created by this phrase were not at issue in *Stark,* but our confrontation therewith was inevitable and emerged in *Armstrong v. Cities Service Gas Co.,* 210 Kan. 298, 502 P. 2d 672. We will not restate the facts in *Armstrong* in view of their complexity and their availability in our reports; however, reference will be made to them in connection with the original rules of law developed therein. One of the primary problems in *Armstrong* was to harmonize the "belief of ownership" concept with K. S. A. 58-2222, which charges the owner of land with constructive notice of facts disclosed by public records. We concluded constructive notice did not prevent a possessor of land from claiming in good faith under "belief of ownership." It was recognized that if the rule were otherwise the concept of "belief of ownership" would be obliterated. If an owner was charged with searching the records and found a defect, he no longer could claim under a "belief of ownership," but would be required to hold by adverse possession. If he searched and found no defects in his title, he would have no need to assert "belief of ownership." We held that the concept of possession under "belief of ownership" could not be judicially nullified.

In *Armstrong,* the remaindermen had knowledge of the existence of the easements for more than fifteen years prior to the filing of the

action. We held a cause of action accrued in the remaindermen on discovery of the easements and the action was barred. The foundation for the conclusion is found in K. S. A. 60-507, which provides:

"No action shall be maintained for the recovery of real property or for the determination of any adverse claim or interest therein, . . . after fifteen (15) years from the time the cause of action accrued."

In the instant case there are no facts relating to knowledge in the remaindermen as to the use of the property by those in possession. K. S. A. 60-503 is directed to a justified state of mind in the possessor of the property. If the possessor satisfies the provisions of the statute, ownership may be confirmed without regard to facts known to the remaindermen.

Since open, continuous and exclusive possession is stipulated (see No. 26 above) the remaining issue in this case is whether the Magies had a good faith belief of ownership and whether under the facts and circumstances such a belief was justified. The record reveals the Magies purchased the subject property in 1943 and received a general warranty deed conveying a fee title without exceptions. The price is questioned by plaintiffs as being more in line with the value of a life estate therein, but no evidence was introduced to support this contention. The Magies were in open, continuous and exclusive possession of the property from 1943 to 1971 when this action was filed. Through the years, Magies engaged in the following acts:

1. In 1944, Magies granted a perpetual easement and right-of-way to Kansas-Nebraska Natural Gas Company, Inc., which conveyance was filed of record May 11, 1944.

2. In 1946, Magies sold the house located on the real estate.

3. In 1949, Magies granted a real estate mortgage on the premises to Kellogg Sales Company, which mortgage was filed of record April 4, 1949.

4. In 1951, 1954, and 1962 Magies granted oil and gas leases on the premises, which leases were filed of record on April 4, 1951, December 1, 1954, and October 11, 1962, respectively.

5. In 1965, Magies sold rock taken from the premises.

6. Magies made improvements on the property at a cost of $750.00.

The manner in which Magies purchased the property, and the facts and circumstances following the purchase, justified their right

to a continuous and uninterrupted belief they owned the whole of title to the property.

We agree with the results of the trial court's judgment, but for a different reason. In *City of Wichita v. Boles,* 156 Kan. 619, 135 P. 2d 542, we held:

"If the trial court renders a correct judgment under the facts and the law, the judgment will not be disturbed merely because wrong reasons are given for its rendition." (Syl. ¶ 2.)

The cited case is also authority for the rule that when the facts are stipulated an appellate court can determine what is shown by the facts as readily and as fully as the trial court. We are required under these circumstances to affirm the judgment of the trial court.

Affirmed.

SCHROEDER, J., dissenting: I must respectfully dissent for the reasons stated in my dissenting opinion in *Armstrong v. Cities Service Gas Co.,* 210 Kan. 298, 314, 502 P. 2d 672.

The facts of this case present a stronger argument for reversal of the trial court's judgment than in *Armstrong* because here the remainderman who acquired title, after the termination of the life estate of Della Wallace in 1966, had no knowledge as to the prior use of the property by those in possession as the remaindermen did in *Armstrong.*

Furthermore, here Della Wallace had a life estate *with a power of disposition.* This court has held that where by the terms of a will the power and discretion to terminate a life estate is vested in a beneficiary, *this power is personal;* and it is not property which may be subjected to forced sale on execution. (*Ryan v. Cullen,* 96 Kan. 284, 150 Pac. 597, Syl. 3.)

It is respectfully submitted the judgment of the lower court should be reversed.