NOT DESIGNATED FOR PUBLICATION

No. 121,519

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

INGER STEWART and JAMES STEWART,
*Appellees*,

v.

KIM D. RADER and VICKY S. COPESS,
*Appellants*.

MEMORANDUM OPINION

Appeal from Atchison District Court; MARTIN J. ASHER, judge. Opinion filed July 31, 2020.
Reversed.

*John W. Fresh*, of Farris, Fresh & Werring Law Offices, of Atchison, for appellants.

No appearance by appellees.

Before ARNOLD-BURGER, C.J., WARNER, J., and LAHEY, S.J.

PER CURIAM:  This appeal arises from a real property dispute over a boundary line. James and Inger Stewart brought this action against their neighbors Kim Rader and Vicky Copess (the Raders) to prevent them from removing a fence between the properties. Surveys showed the fence was not on the property line and encroached onto the Raders' property. The district court ultimately found the fence had existed for more than 40 years and determined the Stewarts were the owners of the disputed strip of land by adverse possession. The Stewarts' ownership spanned only three years, meaning they were required to tack their claim to the period of ownership by their predecessors in

interest. Because the Stewarts failed to present evidence of the prior owners' good-faith possession of the disputed strip of land, we find they have not established a claim for adverse possession and reverse the judgment of the district court.

FACTUAL AND PROCEDURAL BACKGROUND

In 2015, the Stewarts purchased a house and lot in Atchison. The neighboring house to the west was unoccupied. That house was eventually torn down and replaced with a new house in 2017, which the Raders purchased in 2018. Between the two properties, a fence runs north to south but does not stretch to the ends of the property—it extends only one-third the length of the property. The fence existed before either party purchased their respective properties. There is an identical fence that runs north to south on the east side of the Stewarts' house. The Stewarts subsequently connected the two fences across the back of their property.

In 2018, the Raders moved into their property and thereafter obtained a survey which revealed the fence was not on the boundary line—the fence encroached onto their property by varying amounts but as much as three feet at one point. A sidewalk on the east side of the fence also encroached by approximately three inches. The parties had some friendly discussions concerning the matter, but the Raders did not share their survey with the Stewarts. The relationship between the parties quickly deteriorated when the Raders told the Stewarts to move their personal property from along the fence because the fence and trees were being removed. The Stewarts obtained a temporary injunction to enjoin the Raders from removing or modifying the fence or trees. Not long after, the Stewarts procured a separate survey which confirmed the fence encroached on the Raders' property. Up until that point, the Stewarts believed the fence was the boundary line. The Raders also obtained their own temporary injunction to enjoin the Stewarts from using the fence and the disputed strip of land until the matter could be resolved.

Neither party filed a formal petition to quiet title or other claim aside from the injunctions, and there was no pretrial order. As a result, there was some confused procedural discussion at the outset between counsel and the district court. But the cause of action ripened into a quiet title action where the Stewarts claimed they acquired the disputed strip of land that abutted the fence line through adverse possession. The district court held a bench trial on the matter. Five witnesses testified: Mrs. Stewart, Mr. Rader, and three long-time neighborhood residents.

Mrs. Stewart testified she and her husband purchased the property in October 2015 from the Secretary of Housing and Urban Development (HUD) and have occupied it since. They did not survey the boundaries when they purchased the property. Fences were already in place along both the east and west sides of the rear portion of the property, and the Stewarts believed the fences marked the boundary lines. The distance between the east and west fences is 45 feet, which was consistent with the width of the lot according to its legal description. Mrs. Stewart described the fencing as old, fancy metal. The Stewarts did not know how long the fence had been in place or who put it up, but trees have grown into the fence over time. The trees were in place when they moved into the house in 2015. There was also a concrete sidewalk on the Stewarts' property that led to a gate connected to the fence. The surveys noted approximately three inches of this sidewalk also encroached the Raders' property line. This sidewalk—from the corner of the Stewarts' house along the west side to a gate on the fence—existed when the Stewarts purchased the home but they did not know its age. Mrs. Stewart testified she planted irises along the west property line between the fence and the sidewalk, supplementing lilac and jasmine plants that were present at the end of the fence when they purchased the property.

On cross-examination, Mrs. Stewart acknowledged the fence was not the property line and the fence encroached two or three feet into the Raders' property according to both surveys. She confirmed she was unaware of boundary agreements between any of

3

the preceding owners of either parcel and they had not reached any boundary agreement with the Raders.

Three long-time residents of the neighborhood testified that the fence had been in the same location as long as they could remember. One of the neighbors testified the fence was in place 43 years ago when he moved into his house and the fence had not changed over that time period. None of the neighbors knew who built the fence or had any knowledge of any boundary agreement between prior owners of the properties. None of the neighbors knew if prior owners of either parcel knew where the actual property line was located or if there had ever been a dispute over it. None of the neighbors testified about any prior owner's use of the disputed strip of property.

Mr. Rader testified he purchased his property in July 2018 but did not get a survey done until after closing. One of his reasons for obtaining the survey was his concern that the fence line was not the true property line because he knew the exact dimensions of his lot and the survey points. The survey he obtained showed an irregularly shaped encroachment, measuring about 3 inches at the front to 3.3 feet in the middle of the back yard and 2.5 feet at the back of the property. He knew of no prior boundary line agreement by anyone for the property, and he had made none. He intended to remove the fence and replace it with a new one for "privacy and to mark the proper property line." And although he agreed a fence was "absolutely" for marking the property line, he did not agree the 40-year-old fence was the property line. Mr. Rader did not dispute that the fence had been in existence for more than 40 years.

After considering the evidence presented at trial, as well as proposed findings of fact and conclusions of law from the parties after the trial, the district court held that the Stewarts had successfully claimed title to the disputed strip by adverse possession under a good-faith belief of ownership theory. The district court ruled:

"No one testified when the fence was built or under what circumstances it was built but testimony by surrounding neighbors established that is has been in existence for at least 40 years. Neither party got a survey before they purchased their property nor had either any reason to know the true location of the property line until a survey was completed. Photographs show that the fence has grown into trees along the line. (pl. ex. 2,3) The fence appears to be attached to mature well established trees. (def. ex. F) The trees are planted in a straight line along the fence line. Some of the trees appear less than 40 years old.

"There is no evidence to suggest that this is a 'boundary by agreement' type case. Furthermore, there is no evidence that [the Stewarts] held the property adversely to the Raders' interests. The doctrine of adverse possession allows the 'tacking' of possession to establish the requisite time period. *Buchanan v. Rediger*, 26 Kan. App. 2d 59, 62, 975 P.2d 1235, *rev. denied* 267 Kan. 888 (1999). The [Stewarts] and their predecessors in title have possessed the disputed territory openly, exclusively, and continuously for the requisite period of time. The sole issue is whether they have done so under a 'belief of ownership'.

"The term has been defined to be a state of mind which must be based on good faith under circumstances which justify such belief. Further, the good faith belief in ownership must be reasonable. *Akers v. Allaire*, 17 Kan. App.2d 556, *rev. denied* 248 Kan. 994 (1991). The Court finds that the [Stewarts] have met their burden of proof. The photographs of the fence and the trees planted in a straight line along the fence line give the clear appearance of being a boundary line. The existence of the concrete walk further supports the belief that the fence line was intended to be the boundary line. The Court believes that the fence is so near the true boundary and that the contested land in between is so minimal that it would not be apparent to the naked eye that the fence was not the true boundary. There is nothing in the recorded deeds that would give notice of a disparity. There is no evidence that the [Stewarts] or any of their predecessors in title were told that the fence was not the boundary line. The Court concludes that [Stewarts]' possession is in good faith and is reasonable."

The Raders timely appeal.

ANALYSIS

On appeal, the Raders argue the district court's decision that the Stewarts adversely possessed the strip of their land up to the fence line is not supported by sufficient evidence. The Stewarts did not file a brief or otherwise participate in this appeal. Our standard of review provides:

> "Whether a party has acquired title by adverse possession is a question of fact . . . . We review the district court's factual findings to 'determine if the record shows substantial competent evidence' to support the findings. Substantial competent evidence is such evidence that 'provides a substantial basis of fact from which the issues can be reasonably determined.' [Citations omitted.]." *Ruhland v. Elliot*, 302 Kan. 405, 409-10, 353 P.3d 1124 (2015).

A claim of adverse possession is governed by K.S.A. 60-503, which provides:

> "No action shall be maintained against any person for the recovery of real property who has been in open, exclusive and continuous possession of such real property, either under a claim knowingly adverse or under a belief of ownership, for a period of fifteen (15) years. This section shall not apply to any action commenced within one (1) year after the effective date of this act."

"[A] party seeking title by adverse possession must present clear and convincing evidence of the requisite elements found in K.S.A. 60-503." *Wright v. Sourk*, 45 Kan. App. 2d 860, 866, 258 P.3d 981 (2011), *rev. denied* 293 Kan. 1114 (2012). Clear and convincing evidence exists when "the factfinder believes that the truth of the facts asserted is highly probable." *In re B.D.-Y.*, 286 Kan. 686, 697, 187 P.3d 594 (2008); see PIK Civ. 4th 102.11.

When a party seeks title by adverse possession, "[e]very presumption is in subordination to the rightful owner. It is thus presumed that when the [parties'] predecessors entered into possession under their deed, they claimed only the title given by their deed. But these are presumptions only and may be overcome by proof. [Citations omitted.]" *Boese v. Crane*, 182 Kan. 777, 782, 324 P.2d 188 (1958). "A party may not establish adverse possession through inference. Rather, a party claiming title through adverse possession must rely on the strength of his or her own title and not the weaknesses of his or her adversary's title. Every presumption is in subordination to the rightful owner." *Ruhland*, 302 Kan. 405, Syl. ¶ 4. "It is the general rule that boundary lines between adjacent properties are to be determined by reference to the deeds and the intention of the parties as reflected by the descriptions of the properties therein." *Landrum v. Taylor*, 217 Kan. 113, 118, 535 P.2d 406 (1975).

To succeed on their adverse possession claim, the Stewarts had the burden to show it was highly probable that they or their predecessors in interest:

> "(1) possessed the property for a period of 15 years in a manner
> "(2) that is (a) open, (b) exclusive, *and* (c) continuous; and
> "(3) that is either (a) under a claim knowingly adverse *or* (b) under a belief of
> ownership." *Ruhland*, 302 Kan. at 411.

At the bench trial, the district court found the Stewarts established each element of the statute under a belief of ownership through tacking on their ownership with their predecessors in interest. The district court found the fence had existed for 40 years, trees had since grown into the fence, and the sole issue was whether the Stewarts established a belief in ownership of the property. It found the Stewarts met their burden of proof because "the photographs of the fence and the trees planted in a straight line along the fence line give the clear appearance of being a boundary line. The existence of the

concrete walk further supports the belief that the fence line was intended to be the boundary line."

The Raders do not challenge that the Stewarts proved each element of adverse possession for the three years (2015-2018) they lived on the property before discovering the true boundary line. The Raders do not challenge the underlying factual findings made by the district court, and they do not dispute the fence was in place for more than 40 years. Rather, they challenge the legal conclusions drawn from those facts and argue the facts are insufficient to establish an adverse possession claim. The Raders claim the Stewarts failed to show their predecessors in interest "held the property under a good faith belief of ownership based on solely where the fence was placed" and the district court erred in finding the evidence supported the legal conclusion the Stewarts adversely possessed the disputed land for the requisite 15-year period through tacking.

*There is no evidence of good-faith belief of ownership of the disputed strip by the Stewarts' predecessors in interest.*

The Stewarts' claim is based on the open, exclusive, and continuous possession of the disputed strip of property under a belief of ownership; they do not contend their possession was knowingly adverse. Thus, we begin our analysis by reviewing the "belief of ownership" requirement for adverse possession. To meet the 15-year time period for adverse possession, the Stewarts must tack their 3 years of belief of ownership onto that of their predecessors in interest for the preceding 12 years. See 2 C.J.S. Adverse Possession § 156 ("It is generally the rule that an adverse occupant cannot tack the possession of a prior occupant to perfect adverse title in himself or herself where predecessor did not claim title to the land adversely or where he or she could not claim the land adversely."). Yet, the evidence at trial did not establish even the identity of the persons or entities that owned the Stewart property during the preceding 12 years.

The Stewarts did not present evidence to show their predecessors had a belief of ownership of the disputed strip. In discussing the statutory addition of belief of ownership as a basis for adverse possession, our Supreme Court recognized it "gives protection to those who in good faith enter and hold possession of land for the prescribed period in the belief it is theirs." *Armstrong v. Cities Service Gas Co.*, 210 Kan. 298, 308, 502 P.2d 672 (1972). Belief of ownership makes the "state of mind of the possessory claimant a relevant matter." 210 Kan. at 308. When using tacking to support an adverse possession claim, the claimant must show a continual belief in ownership, i.e., the predecessors in interest also believed they owned the disputed land. See *Stith v. Williams*, 227 Kan. 32, 36, 605 P.2d 86 (1980) ("The tacking must evidence a continuous adverse possession for the statutory period."); *Pro Care Auto, LLC v. Hillhouse*, No. 93,400, 2005 WL 1619851, at *1 (Kan. App. 2005) (unpublished opinion) (finding continuous belief of ownership required when tacking to prior owner's time of possession).

"'Belief of ownership' under K.S.A. 60-503 is a state of mind which must be based on good faith under circumstances which justify such belief." *Wallace v. Magie*, 214 Kan. 481, Syl. ¶ 4, 522 P.2d 989 (1974). "K.S.A. 60-503 is directed to a justified state of mind in the possessor of the property." 214 Kan. at 487. We do not disagree that under all the circumstances—including the existence of the fence for 40 years, the tree line, gate, and sidewalk—a prior owner might have reasonably and justifiably believed he or she owned the disputed strip of land. But we find no statutory or caselaw authority that an owner's belief or "state of mind" is a theoretical inquiry. In other words, the prior owner must actually, in good faith, believe he or she owns the subject property. It is not sufficient that circumstances exist which could support such belief. The Stewarts did not identify who owned the property during the 12 years preceding their ownership, nor did they produce evidence that those unknown owners believed, in good faith, they owned the disputed strip of land.

We find the circumstantial proof here falls short of providing substantial competent evidence of the specific "belief of ownership" element for adverse possession.

Reversed.