(258 P.3d 981)
No. 102,627

BRIAN WRIGHT and JODY WRIGHT, *Appellees*, v. CAROLYN KAY
SOURK, *Appellant*.

Opinion filed May 6, 2011.

*W.J. Fitzpatrick*, of Independence, for appellant.

*Jeffrey W. Gettler*, of Emert, Chubb & Gettler, of Independence, for appellees.

BEFORE STANDRIDGE, P.J., MCANANY, J., and KNUDSON, S.J.

MCANANY, J.: Brian and Jody Wright and Carolyn Sourk own adjoining residential properties in Cherryvale. This dispute involves title to a 22.5-foot-wide strip of property at the boundary. Although Sourk was the titled owner of the property, a jury found the Wrights adversely possessed the property for more than 15 years under a good-faith belief in ownership.

In 1956, Sourk's parents bought Lots 9 through 16 in a residential neighborhood and built their home on Lot 13. Sourk was 8 years old at the time the land was purchased. In 1979, Sourk's parents sold Lots 9, 10, and 11 to Wayne Van Dyne. Van Dyne constructed homes on Lots 9 and 11. Van Dyne split Lot 10, assigning half to Lot 9 and half to Lot 11. The house constructed on Lot 11 was well within the confines of Lot 11. In 1985, Sourk acquired title to Lots 12 through 16 from her parents.

In 1992, the Wrights moved into the home on Lot 11, immediately west of and adjacent to Sourk's property. After renting for a year, the Wrights purchased their home under a contract for deed.

According to Brian, shortly after they moved into the home in 1992, Sourk took him into the back yard and pointed out two bricks in the ground that marked the boundary line between their properties (the brick line). Brian testified that Sourk told him, " 'That is the property line, and everything to the east of that is what you have to maintain.' " From that point on, Brian testified that he mowed and maintained the property east of the brick line, and Sourk mowed and maintained the property west of the brick line. Brian did not further investigate because the brick line was consistent with the mow line, there was a visible dip or divot along the line, and he assumed Sourk would know where the property line was since she had lived there since 1956. Based on his conversation with Sourk, Brian believed that he owned everything east of the brick line. Sourk denied having a conversation with Brian in 1992 regarding the property line.

In 1993, Brian erected a shed on the disputed strip of property. Brian testified he did not seek Sourk's permission to construct the storage shed because he believed he owned the property upon which the shed was erected. Sourk claims the storage shed was constructed in 1994. Sourk testified that she had a conversation with Brian during the time that the shed was being constructed. According to Sourk, she advised Brian to check his records to determine his property line. Sourk claimed that Brian showed her the brick line and communicated his understanding that it formed the property line. Sourk testified that she did not know about the bricks and she would check with her mother regarding the significance of the brick line. Brian denies that Sourk ever approached him about the location of the shed and the location of the property line.

Both Brian and Sourk claim they mowed the property east of the brick line on Lot 12. William Blair, a neighbor living across the street from the Wrights and Sourk, corroborated Brian's testimony that Brian always mowed east of the brick line. Blair testified that he never saw Sourk mow the disputed strip of property in Lot 12.

Throughout the years, Brian testified that he and Jody exercised use and control of the property east of the brick line on Lot 12 by using things such as a children's slide, a swing set, and a trampoline. Sourk confirmed that the Wrights exercised use of the property east of the brick line for storing bikes, cars, campers, and a boat. Sourk testified she allowed the use of Lot 12 because she was "such a good neighbor." Brian testified that Sourk never objected to their occupancy, use, and maintenance of the property east of the brick line.

In July 2004, the Wrights built a new addition to their home. The Wrights obtained a building permit before construction began. The addition was located on the west side and extended 22.5 feet onto Lot 12. At the time, the Wrights believed the addition was being constructed within their property line so they did not seek Sourk's permission. Prior to constructing the addition, Brian cut some limbs off the pecan tree located on what they believed was the property line. The tree was cut with Sourk present, and Brian testified that Sourk never objected or voiced her concern that the

tree or the addition were on her property. Sourk claims that she alerted Brian and the contractors that the addition was being constructed on her property. Sourk testified that she notified the city building inspector of the property-line infraction, but no action was taken.

When the Wrights decided to build a fence around their property in August 2007, Jody discussed the idea with Sourk, who made suggestions about the type and placement of the fence to assure the Wrights mowed on both sides of the proposed fence. Thus, the Wrights decided to research the city's setback requirements for a privacy fence.

Brian obtained a measuring wheel to determine the appropriate distance to place the fence from the property line. After taking some measurements, Brian discovered that the brick line was not consistent with the property line listed on the deed. According to Brian, Sourk was shocked to learn about the property-line discrepancy and agreed to obtain a professional survey to determine the true property line. The survey revealed that some of the improvements the Wrights had made to their property over the years, including a storage shed or garage and addition to their home, encroached upon Sourk's lot by 22.5 feet.

On April 9, 2008, the Wrights sued Sourk to quiet title to the disputed 22.5-foot-wide section of property under three theories:

(1) adverse possession by open, exclusive, notorious, and continuous possession for more than 15 years under K.S.A. 60-503(a);

(2) adverse possession under a good-faith belief of ownership for more than 15 years under K.S.A. 60-503(b); and

(3) a boundary line established by express or implied agreement or by acquiescence.

Sourk counterclaimed for a mandatory injunction compelling the Wrights to remove the encroaching structures from her property, for damages for trespass, and for attorney fees. The trial court denied her motion for summary judgment, finding the existence of controverted material facts, and the case went to trial.

At trial, the Wrights abandoned their theory of adverse possession based on hostile or knowingly adverse possession and submitted their case to the jury under the remaining theories of boundary by specific agreement and/or adverse possession under a good-faith belief in ownership. The jury verdict was by special questions as follows:

"1. Was there an agreement between the parties in 1992 after a conversation during which the legal boundary line between their properties was discussed as being what is referred to as the 'brick line' which differs from the legal survey line between the properties by 22.5 feet?
"_____ YES          ___X___ NO

"2. If there was a boundary line agreement in 1992, did the defendant acquiesce or consent to the boundary line agreement by permitting it to be carried out by the plaintiffs.
"_____ YES          _____ NO

"3. Did plaintiffs [judge made correction and initialed] have open, exclusive and continuous possession of the disputed land (22.5 feet) under a good faith belief of ownership for a period of 15 years or more?
"___X___ YES          _____ NO"

The court entered judgment accordingly and denied Sourk's post-trial motions for judgment notwithstanding the verdict or for a new trial. Sourk appeals.

*Adverse possession*

A party may obtain title to real estate through adverse possession upon proof that he or she openly, exclusively, and continuously possessed the property for 15 years either under a claim knowingly adverse or under a good-faith belief of ownership. See K.S.A. 60-503; *Wallace v. Magie,* 214 Kan. 481, 486, 522 P.2d 989 (1974). K.S.A. 60-503 changed the common-law concept of adverse possession by eliminating hostility as an element. See *Stark v. Stanhope,* 206 Kan. 428, 432-33, 480 P.2d 72 (1971). As a result, adverse possession can now be acquired either: (1) under a claim knowingly adverse or (2) through occupancy under a good-faith belief of ownership. The possession must still be "open, exclusive, and continuous" for the 15-year period of time. 206 Kan. at 432. Further, the party's belief of ownership must not only be made in

good faith, but it must also be reasonable. *Akers v. Allaire*, 17 Kan. App. 2d 556, 558, 840 P.2d 547, *rev. denied* 252 Kan. 1091 (1992).

"Generally, whether title is acquired through adverse possession is a question of fact to be determined by the trier of fact. [Citation omitted.]" *Chesbro v. Board of Douglas County Comm'rs*, 39 Kan. App. 2d 954, 960, 186 P.3d 829, *rev. denied* 286 Kan. 1176 (2008). On appeal, we determine whether the jury's findings of fact are supported by substantial competent evidence. In doing so, we do not weigh conflicting evidence, evaluate witness credibility, or re-determine questions of fact. *In re Estate of Hjersted*, 285 Kan. 559, 571, 175 P.3d 810 (2008); *Rucker Properties v. Friday*, 41 Kan. App. 2d 664, 670-71, 204 P.3d 671 (2009).

When a party seeks title by adverse possession, every presumption is in favor of the holder of the legal title and against the claimant. *Stith v. Williams*, 227 Kan. 32, 36, 605 P.2d 86 (1980). Kansas law does not allow the property of a person to be taken by another upon slight presumptions or probabilities. 227 Kan. at 36. Thus, a party seeking title by adverse possession must present clear and convincing evidence of the requisite elements found in K.S.A. 60-503. *Boese v. Crane*, 182 Kan. 777, 782, 324 P.2d 188 (1958).

The doctrine of adverse possession provides that " 'the true owner of property, who fails to protect rights of ownership against one holding in adverse possession and manifesting the same as required by statute and for the length of time fixed thereby, is considered as having acquiesced in the transfer of ownership.' [Citation omitted]." *Buchanan v. Rediger*, 26 Kan. App. 2d 59, 62, 975 P.2d 1235, *rev. denied* 267 Kan. 888 (1999).

*The jury's verdict*

Sourk's primary issue on appeal involves the interrelation between Special Questions 1 and 3. She argues that the jury's "NO" answer on Special Question 1 was fatal as to all of the Wrights' theories, so their "YES" answer to Special Question 3 resulted in an inconsistent verdict. Stated another way, she argues both of the Wrights' theories of recovery (boundary-by-agreement and adverse possession based on a good-faith belief in ownership) depended on whether there was an agreement to treat the brick line as their

boundary line in 1992. Since the jury found there was no such agreement, she insists the Wrights' theory of adverse possession based on a good-faith belief in ownership for 15 years necessarily fails. Thus, she contends the Wrights were limited to pursuing adverse possession by hostile taking—a theory they abandoned at trial.

Sourk frames this issue in various ways. Sourk first asserts the trial court erred in denying her motion for judgment as a matter of law or, alternatively, in denying her motion for new trial. To the extent Sourk argues the trial court erred in not granting her motion for judgment as a matter of law, we review this issue under the standard formerly applied to review the denial of a motion for directed verdict. See *Munoz v. Clark*, 41 Kan. App. 2d 56, 61, 199 P.3d 1283, *rev. denied* 289 Kan. 1279 (2009). That standard requires us to resolve all facts and draw reasonable inferences from the evidence in favor of the Wrights to determine whether there is evidence supporting the jury's verdict in their favor. If reasonable minds could reach different conclusions under the evidence, we will uphold the court's denial of Sourk's motion for judgment as a matter of law. However, if no evidence is presented in support of an issue "or where the evidence is undisputed and the minds of reasonable persons may not draw differing inferences or arrive at opposing conclusions, it is a question of law for the court's determination. [Citations omitted.]" 41 Kan. App. 2d at 62.

Sourk also claims the trial court erred in denying her motion for a new trial on the same theory that the verdict was inconsistent. We review the trial court's denial of Sourk's motion for a new trial on this issue for an abuse of discretion. *City of Mission Hills v. Sexton*, 284 Kan. 414, 421, 160 P.3d 812 (2007).

Finally, Sourk claims the trial court erred in instructing the jury regarding the special questions. To the extent Sourk is arguing instructional error, several principles guide our review. First, we consider all instructions together as a whole to determine if they fairly instructed the jury on the law governing the case. Second, we may disregard isolated instructional errors as harmless and will not reverse unless there is a showing of prejudice. If the instructions are substantially correct and could not reasonably have misled

the jury, we will not find error. *Wood v. Groh*, 269 Kan. 420, 423-24, 7 P.3d 1163 (2000). However, we have unlimited review in determining whether an instruction accurately and fairly states the law as applied to the facts of the case. *Puckett v. Mt. Carmel Regional Med. Center*, 290 Kan. 406, 417-19, 228 P.3d 1048 (2010).

With these standards of review in mind, we turn to Sourk's argument that the Wrights' theory of adverse possession based on a good-faith belief in ownership was based solely on the existence of a boundary-line agreement with Sourk. In support of this argument, Sourk quotes an exchange between her counsel and Brian following Brian's admission that his 15-year period of good-faith belief in ownership began in 1992:

"Q   Okay. So then—now we have this discussion in 1992 when it supposedly all started?

"A   We had the discussion when we moved in in '92, yes.

"Q   But your whole case is built on that, isn't it?

"A   Because it's the truth.

"Q   I didn't—I'm not trying to argue with you. It may not be fair to you, but I get to ask the questions and you have to answer. I'm sorry, but that's kind of the way it is.

You want her to read the question back to you?

"[DEFENSE COUNSEL]: Would you read the question back please?

"(The court reporter read previous question.)

"Q   (By [defense counsel]) That 1992 conversation?

"A   Yes."

The Wrights respond that Sourk's argument is flawed because it disregards the evidence and the trial court's ruling on this issue. In denying Sourk's motion for new trial, the trial judge found:

"I don't think—first of all, the verdict was contrary to the law or evidence. I think that Plaintiff, Brian Wright, testified that Defendant showed him a brick line in 1992.

"Now, question—special question number one . . . [t]hat ask[ed] for a yes or no answer and the jury answered, no. As I read it they said, no, there was not an agreement between the parties in 1992. It didn't say they didn't have a meeting. I think that is up to a jury [to] decide whether there was a conversation between Defendant and Mr. Wright, and I think that the jury thought that Plaintiff after he testified there was a conversation and that Plaintiff after that thought and believed that was the property line and commenced to take possession by mowing and we have further testimony of the neighbor, who testified that from and after

the time Plaintiff moved in in 1992 and he occupied the land including the 22.5 feet that is disputed.

"I had thought that Mr. Wright appeared to be a very truthful witness and it's up to a jury to give weight and credibility to each witness and testimony of each witness and I think that's what they did."

The trial court correctly found that the two theories asserted by Brian were not mutually exclusive. The jury could have believed Brian's testimony that he had a conversation with Sourk regarding the property line and thus relied on that conversation in forming a good-faith belief of ownership. In making such finding, the jury did not have to find that Sourk and the Wrights reached an agreement that the brick line formed the correct property line. Contrary to his testimony on cross-examination relied on by Sourk, the Wrights' adverse possession claim did not hinge solely on an agreement with Sourk about the boundary line. Rather, Brian repeatedly clarified that his adverse possession claim was based both on a *discussion*—not necessarily agreement—with Sourk about the brick line and his maintenance, use, and construction on the property. The trial court properly concluded the jury could reasonably answer the boundary-by-agreement and adverse-possession questions independently of one another.

Because the jury's answers to Special Questions 1 and 3 were not inconsistent, the trial court did not err in denying Sourk's motion for judgment notwithstanding the verdict or for a new trial on that basis. Further, it was not error to instruct the jury that it could find a claim under adverse possession based on good-faith belief in ownership without first finding an agreement between the parties.

### Sufficiency of the Evidence

Next, Sourk asserts that the Wrights failed to prove that they adversely possessed the property for 15 years under a good-faith belief in ownership. First, Sourk asserts the type of uses the Wrights made of the disputed property beginning in 1992 did not, as a matter of law, trigger the running of the 15-year period required to establish adverse possession. See K.S.A. 60-503. Second, Sourk suggests the Wrights ceased having a good-faith belief in

ownership of the property when they built the addition on their home in 2004.

What types of land use qualify to trigger the start of the 15-year period required to establish adverse possession under K.S.A. 60-503 is a question of law over which we have unlimited review. See *Owen Lumber Co. v. Chartrand*, 283 Kan. 911, 915-16, 157 P.3d 1109 (2007).

K.S.A. 60-503 states: "No action shall be maintained against any person for the recovery of real property who has been in open, exclusive and continuous possession of such real property, either under a claim knowingly adverse or under a belief of ownership, for a period of fifteen (15) years." The Kansas Supreme Court has interpreted "belief of ownership" under K.S.A. 60-503 as "a state of mind which must be based on good faith under circumstances which justify such belief." *Wallace*, 214 Kan. 481, Syl. ¶ 4. Such a good-faith belief in ownership must be reasonable. *Armstrong v. Cities Service Gas Co.*, 210 Kan. 298, 309, 502 P.2d 672 (1972); *Akers*, 17 Kan. App. 2d at 558.

Sourk insists the Wrights' acts of placing children's play equipment under the pecan tree and mowing the disputed tract of land were legally insufficient to justify a finding that they had a good-faith belief in ownership. Instead, she argues the running of the 15-year period for adverse possession could not have begun until at least July 1993, when the Wrights said they built the storage shed. Because the Wrights could no longer claim a good-faith belief in ownership after they obtained the 2007 survey, Sourk contends the 15-year period was not met.

Sourk's claim that something more than mowing, cultivating, or minor landscaping was required is premised on cases from other jurisdictions that are legally distinguishable. *Romans v. Nadler*, 217 Minn. 174, 14 N.W.2d 482 (1994); *Bravard v. Curran*, 155 Ohio App. 3d 713, 716, 803 N.E.2d 846 (2004); and *Masonic Bldg. Ass'n of Houston v. McWhorter*, 177 S.W.3d 465, 475 (Tex. App. 2005), did not involve a claim of adverse possession under a good-faith belief of ownership as is found in K.S.A. 60-503. Kansas law provides:

"To constitute adverse possession of land, it is not absolutely necessary that there should be [e]nclosures, buildings, or cultivation, but the acts done must be such as to give unequivocal notice of the claim to the land, adverse to the claims of all others, and must be of such a character and so openly done that the real owner will be presumed to know that a possession adverse to his title has been taken." *Tucker v. Hankey*, 173 Kan. 593, Syl. ¶ 3, 250 P.2d 784 (1952).

The jury was so instructed, and there is nothing to show the jury disregarded that instruction.

The Wrights did more than cut and maintain the grass. Even prior to the placement of the shed in 1993, there is evidence that the Wrights located playground equipment and other personal property on the disputed tract. Substantial evidence supports the jury's verdict that the acts done were sufficient to provide unequivocal notice of a claim to the ownership of the property. See *Tucker*, 173 Kan. 593, Syl. ¶ 3.

Sourk also argues that because the Wrights did not disprove her testimony that she complained to city officials about the Wrights' building of the addition to their home in 2004, they cannot show they adversely possessed the property after that point. Sourk insists her "public complaint to the building inspector in 2004 tolled the statutory period at twelve (12) years." However, it was the jury's role to determine whether it believed Sourk's testimony that she complained to city officials in 2004.

Whether title is acquired by adverse possession is a question of fact. *Chesbro*, 39 Kan. App. 2d at 960. Sourk's argument wholly disregards this court's standard for reviewing the sufficiency of the evidence to support the jury's findings of fact. That standard requires us to view the evidence in a light most favorable to the Wrights, who were the prevailing party, and prohibits us from reweighing the evidence or assessing credibility. See *Rucker Properties*, 41 Kan. App. 2d at 670-71.

Applying this standard of review, we find sufficient evidence to support the jury's verdict. The Wrights' activities on the disputed property from 1992 to 2007 gave unequivocal notice of their claim to the land, adverse to the claims of all others, and were of such a character and so openly done that Sourk was presumed to know that a possession adverse to her title had been taken. We find the

Wrights presented clear and convincing evidence of the requisite elements found in K.S.A. 60-503. See *Boese,* 182 Kan. at 782.

*Tolling*

Sourk also argues that Special Question 3 was erroneous because "there were no instructions informing the jury what events tolled running of the statute." She argues that without such an instruction, the jury may have determined the 15-year period was satisfied by measuring from the construction of the storage shed up to and including the date of the jury verdict.

Sourk did not request such an instruction. See K.S.A. 60-251(b). K.S.A. 2010 Supp. 60-251(d)(2)(1) now allows the court to consider an unpreserved instructional error "if the giving or failure to give an instruction is clearly erroneous and the error affects substantial rights." Instructional errors will be deemed clearly erroneous only when the reviewing court reaches a firm conviction that if the error had not occurred, there is a real possibility that the jury would have returned a different verdict. *Unruh v. Purina Mills,* 289 Kan. 1185, 1197, 221 P.3d 1130 (2009).

Sourk's argument regarding how the jury determined the 15-year period is based on speculation. Sourk's argument presumes the jury disregarded the undisputed evidence that the Wrights learned the property did not belong to them when they received the survey conducted on October 28, 2007. The jury would have to disregard this evidence to extend the running of the 15-year requirement to a later date. We will not make such assumptions to overturn a jury's verdict. Nor is there anything in the record to lead to a firm conviction that the jury would have returned a different verdict if instructed on the time frames within which it was allowed to find the Wrights adversely possessed the property.

*Other Claims of Instruction Errors*

Sourk's next three issues involve instructions she requested but the trial court refused to give.

As our Supreme Court recently clarified, the threshold standard for deciding whether an instruction should be given is as follows:

"[A] trial court is required to give an instruction supporting a party's theory if the instruction is requested and there is evidence supporting the theory which,

if accepted as true and viewed in the light most favorable to the requesting party, is sufficient for reasonable minds to reach different conclusions based on the evidence." *Puckett*, 290 Kan. at 419.

When, as here, a timely and specific objection is made, an appellate court applies this same standard, keeping in mind that even if the evidence supports the giving of an instruction, it must accurately and fairly state the law as applied to the facts of the case. We have unlimited review over such matters. 290 Kan. at 419.

1. *Intent to establish new boundary line at variance with the official deeds*

Sourk claims the trial court erred in refusing to give the following instruction:

"To meet their burden of proving title to the disputed 22.5 fee on Lot 12 under the theory of an express or implied agreement, the plaintiffs must establish by a preponderance of the evidence the following elements:

"1. That at the time the agreement was made, the plaintiffs and defendant knew the true location of the official boundary line between Lot 11 and Lot 12 . . . .

"2. That at the time the agreement was made, the plaintiffs and the defendant intended to move the official boundary line between Lot 11 and 12, by 22.5 feet to the West.

"3. That the agreement was supported by valuable and adequate consideration."

Sourk argues this instruction was required because our Supreme Court stated in *Stith*: "The record is void of evidence the parties agreed to establish a boundary line at variance with the stated boundaries set forth in the deeds to the property." 227 Kan. at 35.

Because the case was submitted to the jury under a theory of the existence of a 1992 agreement regarding the boundary line, the trial court should have given this instruction. However, Sourk fails to show prejudice because the jury rejected the Wrights' theory of an agreement. See *Wood*, 269 Kan. at 423 ("errors regarding jury instructions will not demand reversal unless they result in prejudice to the appealing party"). Thus, any error in failing to instruct the jury on this theory was harmless.

2. *K.S.A. 58-2222*

Sourk claims the trial court erred in rejecting her request to instruct the jury on K.S.A. 58-2222. K.S.A. 58-2222 governs the

legal effect of filing a deed for property with the county register of deeds. It provides:

"Every such instrument in writing, certified and recorded in the manner here-inbefore prescribed, shall, from the time of filing the same with the register of deeds for record, impart notice to all persons of the contents thereof; and all subsequent purchasers and mortgagees shall be deemed to purchase with notice." K.S.A. 58-2222.

Sourk argues this statute imputes constructive knowledge to the Wrights of the boundary line between their Lot 11 and Sourk's Lot 12. This argument was previously rejected by our Supreme Court in *Wallace*. The court stated:

"One of the primary problems in *Armstrong*[, 210 Kan. 298,] was to harmonize the 'belief of ownership' concept [of adverse possession under K.S.A. 60-503] with K.S.A. 58-2222, which charges the owner of land with constructive notice of facts disclosed by public records. We concluded constructive notice did not prevent a possessor of land from claiming in good faith under 'belief of ownership.' It was recognized that if the rule were otherwise the concept of 'belief of ownership' would be obliterated. If an owner was charged with searching the records and found a defect, he no longer could claim under a 'belief of ownership,' but would be required to hold by adverse possession. If he searched and found no defects in his title, he would have no need to assert 'belief of ownership.' We held that the concept of possession under 'belief of ownership' could not be judicially nullified." *Wallace*, 214 Kan. at 486.

We are duty bound to follow *Wallace*. See *State v. Merrills*, 37 Kan. App. 2d 81, 83, 149 P.3d 869, *rev. denied* 284 Kan. 949 (2007). Accordingly, the trial court did not err in refusing to instruct the jury that the Wrights had constructive knowledge of their property lines based on K.S.A. 58-2222.

3. *Martin v. Hinnen*

Sourk also claims the court erred in refusing to give two instructions on the holding in *Martin v. Hinnen*, 3 Kan. App. 2d 106, 590 P.2d 589 (1979). Those instructions involve a theory of acquiescence or an implied agreement. The proposed instructions read:

"You are instructed that plaintiffs cannot prevail on a claim of title to the disputed 22.5 feet under the doctrine of 'acquiescence' unless the evidence establishes that both parties had an actual dispute regarding the true boundary line,

and notwithstanding that dispute, the defendant acquiesced in the encroachment for a sufficient period of time to manifest abandonment of title.

"The plaintiffs have the burden of proving this by a preponderance of the evidence."

and

"Plaintiffs cannot rely on silence alone to establish a valid claim of title to the disputed 22.5 feet of Lot 12 on the theory of an 'implied agreement.' Under that theory, plaintiffs must establish a course of affirmative conduct on the part of the defendant that clearly demonstrated her knowledge of the encroachment and some affirmative conduct on her part that demonstrated acceptance of the encroachment and a willingness to forfeit title to that land to the plaintiffs."

The relevant holdings in *Martin* upon which Sourk relies address the concept of acquiescence in claims based on boundaries fixed by agreement, not adverse possession based on belief of ownership. See 3 Kan. App. 2d at 108-13. These instructions are relevant only to the Wrights' claim to the property based on an agreement, which the jury rejected. As a result, Sourk cannot establish prejudice based on the trial court's refusal to give these instructions. See *Wood*, 269 Kan. at 423.

### 4. *Burden of proof*

This brings us to Sourk's letter of supplemental authority under Supreme Court Rule 6.09 (2010 Kan. Ct. R. Annot. 48). In that letter, Sourk cites this court's recent opinion in *Brownback v. Doe*, 44 Kan. App. 2d 938, 241 P.3d 1023 (2010), which Sourk claims supports her argument that she was entitled to the proposed instructions regarding the court's holding in *Martin*. Sourk argues *Brownback* establishes that the Wrights had to establish adverse possession by clear and convincing evidence, which was not met by simply mowing a lawn or placing children's play equipment under a shade tree.

Sourk is attempting to raise a new issue regarding the burden of proof. Rule 6.09 allows for supplementing authority in support of issues raised in a brief, but it is not a mechanism for raising new issues. *Hankin v. Graphic Technology, Inc.*, 43 Kan. App. 2d 92, 109, 222 P.3d 523 (2010). Sourk did not object to the standard of review at trial, nor was the issue raised in her appellate brief. Thus,

the issue regarding error instructing the jury on the burden of proof was not preserved for appeal.

### 5. *Including "a claim knowingly adverse" in a jury instruction*

Finally, Sourk argues the trial court erred by including the phrase "under a claim knowingly adverse" in the definition of adverse possession because the Wrights abandoned that claim at trial.

Despite the parties' agreement to strike this language and abandon a claim under this theory at trial, the trial court erroneously left the language in the instruction, apparently because the Wrights had pled that theory in their petition. Sourk claims the error was not harmless because "after two days of trial the jury was fairly well acquainted with the fact that plaintiffs sought title under both prongs of adverse possession . . . [and] it is doubtful they were sufficiently·sophisticated to understand that theory had been abandoned by the plaintiffs in chambers."

The Special Questions verdict form clarified the theories under which the Wrights sought relief. The instructions, when viewed as a whole, fairly instruct the jury on the law governing the case. Although this error was included in the general definition of adverse possession, the remainder of the instruction defining the theory of the Wrights' case focused only on their claim of a good-faith belief in ownership. Question 3 asked only whether the jury agreed the Wrights claimed adverse possession under a good-faith belief in ownership. The jury was never asked to find if there was adverse possession under a claim knowingly adverse. The error was harmless.

Affirmed.