NOT DESIGNATED FOR PUBLICATION

No. 123,092

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

JERRY SHELTON,
TRUSTEE OF THE JERRY SHELTON REVOCABLE LIVING TRUST,
*Appellant*,

v.

DAVID M. CHACKO,
*Appellee*,

RICELAND PROPERTIES KANSAS, LLC; RICELAND PROPERTIES, LLC;
and W. ELTON KENNEDY,

*Defendants*.

MEMORANDUM OPINION

Appeal from Barber District Court; FRANCIS E. MEISENHEIMER, judge. Opinion filed January 7, 2022. Affirmed.

*John D. Beverlin II*, of Stull, Beverlin, Nicolay & Haas, LLC, of Pratt, for appellant.

*Hannah L. Brass*, of Medicine Lodge, for appellee.

Before GARDNER, P.J., SCHROEDER and CLINE, JJ.

PER CURIAM:  In this case two neighbors dispute ownership of land. Jerry Shelton owns land to the east of, and next to, land owned by Dr. David M. Chacko. Sometime before 1991, a two-mile fence was built near the legal boundary line separating the two properties. It is unclear who built the fence and why the fence did not follow the legal boundary line.

1

In 2018, Shelton sued several individuals, claiming the fence encroaches onto his property about 40 acres on Sections 30 and 32, and sued Chacko for trespass and quiet title to his land on Chacko's side of the fence. Chacko counterclaimed, claiming he obtained legal title to the disputed tract through adverse possession for 15 years. The district court agreed that Chacko had adversely possessed the disputed tract within the parallel portion of the fence on Sections 30 and 32 for 15 years.

Shelton appeals, arguing the district court erred in finding Chacko met his burden of proof of adverse possession.

*Factual and Procedural Background*

As in most land disputes, the parties offered conflicting evidence about the timing of events, the existence and context of conversations between them, and their respective uses of the disputed land. But the parties agree on the timeline of the land ownership.

The plaintiff, Shelton, Trustee of the Jerry Shelton Revocable Living Trust owns real estate in Barber County, Kansas. Shelton bought the property from Riceland Properties Kansas, LLC in 2017. The real estate is in Sections 30 and 32 in Township 32 South, Range 14 West and portions of Section 6 in Township 33 South, Range 14 West. The defendant, Chacko owns the real estate directly to the west of Shelton's property in Sections 30 and 31 in Township 32 South, Range 14 West and portions of Section 6 in Township 33 South, Range 14 West.

A two-mile fence runs north and south, separating the two properties. Shelton learned of the fence's existence about a month after he bought the property in 2017 and of the encroachment after he obtained a survey in 2018. Chacko discovered the encroachment in 2016 from his ranch manager, Kent Remmers. The parties agree that the

2

fence is not on the boundary line stated in the deeds to their properties and extends on to the Shelton Property on Sections 30, 32, and 6 for about 50 acres.

The two properties were once subject to a common ownership and were known as the Gentry Ranch. The common owner, J.H. Gentry, died in 1933. In his last will, Gentry devised a life estate to Beulah Cline and Velma Mills who were allowed to occupy the properties. The Gentry property was split evenly according to a then-existing "east and west fence."

*Chacko's Property*

While Beulah had a life estate in the property, her living children each received a vested remainder interest in Gentry's property. Beulah's children each owned a vested remainder interest from Gentry's death in 1933 until Beulah's death in 1994. Wesley Cline was one of those children. When Beulah died in 1994, Cline received an undivided fee interest to the Chacko Property. Cline and eleven other heirs sold the Chacko Property to an entity called Gentry Ranch Partners, LLC in December 2010. Chacko was a member of the Gentry Ranch Partners, LLC and bought the Chacko Property from that entity in June 2017.

*Shelton's Property*

Cline and his brother, James, owned the Shelton property between 1974 and 1981 before they sold it to DNB Drilling, Inc. in June 1981. They retained a mineral interest in the property and a right-of-way on Sections 6 and 7 for "movement of cattle and horses" along the existing "driveway and trail" to benefit the "operations on the Gentry Ranch." At the time of Cline's 1981 conveyance, he had a vested remainder interest in the Chacko Property.

DNB Drilling, Inc. sold the Shelton Property to Timothy and Ann Miller in May 1991, and the Millers sold the property to Terrance Miller on the same day. Terrance Miller sold portions of the property to Ian and Sarah Kovach in October 2001. Miller then sold the rest of the Shelton Property to Riceland Properties Kansas, LLC in June 2007. Elton Kennedy was a member of Riceland Properties Kansas, LLC. He obtained a survey of the Shelton Property in 2012 and 2015, which showed a fence encroachment on the Shelton Property. Riceland Properties Kansas, LLC eventually acquired all the Shelton Property when it bought the rest of it from an LLC created by the Kovachs. This occurred in three transactions between September 12, 2012, and December 3, 2015. Shelton bought the Shelton Property in one transaction from Riceland Properties Kansas, LLC in November 2017, and later discovered the fence encroachment.

*The Trial*

Upon discovering the encroachment, Shelton sued Chacko in October 2018 for trespass and to quiet title to the disputed tract. Chacko counter-claimed seeking a declaratory judgment that he owned the disputed property by adverse possession. The parties presented evidence and submitted the case to the court for decision.

Aside from the undisputed timeline of property ownership, the district court found that although the testimony varied as to the age of the fence, it had been in its current location since at least 1991. The court adopted various proposed findings of fact from both parties and found that Chacko had met his burden of proving he had adversely possessed the disputed tract in Sections 30 and 32 by clear and convincing evidence. But the district court found Chacko did not carry his burden to prove that he had a belief of ownership of the disputed tract in Section 6. The court also denied Shelton's trespass claims based on its finding that Chacko adversely possessed the disputed tract in Sections 30 and 32 and because the fence in Section 6 had been placed for convenience to both parties and did not amount to trespass.

4

Shelton timely appeals the district court's ruling as to the disputed tract in Sections 30 and 32 of his property.

*Standard of Review*

Whether an individual acquires title by adverse possession is a question of fact. *Ruhland v. Elliott*, 302 Kan. 405, 409, 353 P.3d 1124 (2015). And a party seeking title by adverse possession must present clear and convincing evidence of the requisite statutory elements. Clear and convincing evidence means that the truth of the facts is highly probable. 302 Kan. at 410. Kansas law creates a presumption favoring the legal title holder and requires facts establishing adverse possession to be established and not presumed. 302 Kan. at 410-11. "A party may not establish adverse possession through inference. Rather, a party claiming title through adverse possession must rely on the strength of his or her own title and not the weaknesses of his or her adversary's title. Every presumption is in subordination to the rightful owner." 302 Kan. 405, Syl. ¶ 4.

This court reviews a district court's interpretation of the adverse possession statute de novo. *Ruhland*, 302 Kan. at 410. But we review the district court's factual findings for substantial competent evidence. In doing so, this court does not reweigh conflicting evidence, evaluate witness credibility, or redetermine questions of fact. *Wright v. Sourk*, 45 Kan. App. 2d 860, 866, 258 P.3d 981 (2011). Substantial competent evidence is such evidence that "'provides a substantial basis of fact from which the issues can be reasonably determined.'" *Ruhland*, 302 Kan. at 410.

*Did the District Court Err by Finding Chacko Met His Burden of Proving His Adverse Possession Claim?*

Shelton argues that Chacko failed to prove that both he and his predecessor in interest adversely possessed the disputed tract under a good-faith belief of ownership.

5

Chacko counters that substantial competent evidence supports the district court's decision.

*Basic Legal Principles*

The theory of adverse possession provides that if a trespasser uses land as his or her own for the statutory period and in accordance with the statute's requirements, the trespasser may receive title to the land and the landowner is barred from recovering the land from the trespasser. *Crone v. Nuss*, 46 Kan. App. 2d 436, 437-38, 263 P.3d 809 (2011). By failing to protect his or her rights of ownership, a landlord "acquiesces in the transfer of ownership to one who has fulfilled the requirements of the statute." 46 Kan. App. 2d at 437.

K.S.A. 60-503 governs adverse possession claims:

"No action shall be maintained against any person for the recovery of real property who has been in open, exclusive and continuous possession of such real property, either under a claim knowingly adverse or under a belief of ownership, for a period of fifteen (15) years."

To succeed on an adverse possession claim, the claimant thus has the burden to show it is highly probable that he or she:

"(1) possessed the property for a period of 15 years in a manner
"(2) that is (a) open, (b) exclusive, *and* (c) continuous; and
"(3) that is either (a) under a claim knowingly adverse *or* (b) under a belief of ownership." *Ruhland*, 302 Kan. at 411.

6

Chacko's claim of adverse possession is that he possessed the property under a belief of ownership for the required time. The parties do not dispute that Chacko's possession was open and exclusive.

A separate statute provides the limitations period for adverse possession claims:

"No action shall be maintained for the recovery of real property or for the determination of any adverse claim or interest therein, not provided for in this article, after fifteen (15) years from the time the cause of action accrued." K.S.A. 60-507.

"The language of the two statutes suggests there might be a factual scenario under which an action for the recovery of real property is time-barred by K.S.A. 60-507 even though the elements of adverse possession have not been satisfied under K.S.A. 60-503." *Oxy USA v. Red Wing Oil,* 309 Kan. 1022, 1026, 442 P.3d 504 (2019). But we need not decide whether Chacko's claim for adverse possession is time-barred by this statute of limitation because Shelton does not argue on appeal that Chacko's cause of action accrued more than 15 years before Chacko claimed adverse possession in 2018. Shelton argues the district court failed to find when the statute of limitations began running but does not argue Chacko's adverse possession claim was time-barred. In short, Shelton raises no statute of limitations defense on appeal.

Chacko claimed to the district court, as he does on appeal, that he possessed the disputed tract under a good-faith belief of ownership. But Chacko had owned the land for only 8 years when he filed his 2018 claim for adverse possession, so he had to rely on tacking. (Chacko was a member of Gentry Ranch Partners, LLC that bought the Chacko Property from Cline and eleven other heirs in December 2010, then Chacko bought the same property from the LLC in June 2017.) If the claimant has not possessed the land for the requisite 15 years, the claimant must "tack" on to the possession of the prior

7

occupant. *Stith v. Williams*, 227 Kan. 32, 36, 605 P.2d 86 (1980). "The tacking must evidence a continuous adverse possession for the statutory period. In addition, there must be no abandonments or other interruptions between those periods of possession that might return seisin to the owner." 227 Kan. at 36.

As a result, to meet the 15-year statutory requirement, Chacko had the burden to prove to the district court by clear and convincing evidence that he, for 8 years, and Cline, for 7 years, believed in good faith that they owned the disputed tract of land. See *Stewart v. Rader*, No. 121,519, 2020 WL 4379049, at *4 (Kan. App. 2020) (unpublished opinion) ("To meet the 15-year time period for adverse possession, the Stewarts must tack their 3 years of belief of ownership onto that of their predecessors in interest for the preceding 12 years."). See *Rowland v. Barb*, No. 94,151, 2006 WL 2337219, at *2 (Kan. App. 2006) (unpublished opinion) (noting district court's finding that adverse possession plaintiff had been in actual, open, and peaceful possession of the land for more than 15 years before plaintiff filed the petition); see also *Fregosi, v. Oshawno Lake Association, Inc.*, No. 87,300, 2002 WL 35657647, at *5 (Kan. App. 2002) (unpublished opinion) (finding district court's determination that Silver had begun exercising his rights over Lake Road more than 15 years before the plaintiffs filed suit was not supported by any evidence in the record and summary judgment of adverse possession was reversed and remanded.)

"When using tacking to support an adverse possession claim, the claimant must show a continual belief in ownership, i.e., the predecessors in interest also believed they owned the disputed land." *Rader*, 2020 WL 4379049, at *4. "'Belief of ownership' under K.S.A. 60-503 is a state of mind which must be based on good faith under circumstances which justify such belief." *Wallace v. Magie*, 214 Kan. 481, Syl. ¶ 4, 522 P.2d 989 (1974). "The question of what constitutes good faith in one claiming to hold property under a belief of ownership is a question for the trier of the fact." *Armstrong v. Cities Service Gas Co.*, 210 Kan. 298, 311-12, 502 P.2d 672 (1972); see *Rader*, 2020 WL

8

4379049, at *5 (finding insufficient evidence of good-faith belief of ownership when the adverse possession claimant who owned the property for only 3 years neither identified who owned the property during the 12 years preceding their ownership, nor produced evidence that those unknown owners believed, in good faith, they owned the disputed land).

Although a claim of adverse possession cannot be based solely on inference, our Supreme Court has long allowed district courts to base factual findings relevant to adverse possession largely on circumstantial evidence. See *Wagner v. Thompson*, 163 Kan. 662, 667-70, 186 P.2d 278 (1947) (finding substantial evidence of adverse possession where findings were based largely on circumstantial evidence). And even the highest standard of proof, "beyond a reasonable doubt," can be proven by circumstantial evidence. See *State v. Logsdon*, 304 Kan. 3, 25, 371 P.3d 836 (2016). So Chacko may meet his burden to prove his and Cline's good-faith belief of ownership by circumstantial evidence.

We note that a person's good-faith belief of ownership is not negated by the deed by which one acquires title to the property. True, K.S.A. 58-2222 states that every instrument conveying real estate

> "in writing, certified and recorded in the manner hereinbefore prescribed, shall, from the time of filing the same with the register of deeds for record, impart notice to all persons of the contents thereof; and all subsequent purchasers and mortgagees shall be deemed to purchase with notice."

But the Kansas Supreme Court has rejected the argument that constructive knowledge of property lines defeats adverse possession. In *Wallace*, 214 Kan. at 486-88, our Supreme Court acknowledged that this statute charges the owner of land with constructive notice of facts disclosed by public records. Still, the court found that

constructive notice does not prevent a possessor of land from claiming a good-faith belief of ownership for purposes of adverse possession. As the court said, "if the rule were otherwise the concept of 'belief of ownership' would be obliterated." 214 Kan. at 486. See also *Armstrong,* 210 Kan. at 311 (argument that deed imparts notice of the correct property lines improperly nullifies concept of adverse possession).

*Chacko's Good-Faith Belief*

Shelton argues that Chacko could not have had a reasonable, good-faith belief in ownership because his own testimony demonstrated "clear doubt or uncertainty" showing he did not believe he owned the property up to the fence line.

Shelton asserts that Chacko was told in 2016 that the fence was not on the boundary line, that he agreed with Kennedy to move it, and that he later changed his mind only because of the time crunch created by the April 2016 fire and the cost of moving the fence. And some evidence supports that version of events. But contradictory testimony was also introduced. Shelton maintains that Kennedy spoke with Chacko about moving the fence to the property line, yet the district court found Chacko's testimony denying the conversation more credible. We are not a fact-finding court, nor do we reweigh evidence or redetermine witness credibility. *Wright*, 45 Kan. App. 2d at 866.

We summarize the evidence presented at the bench trial. Shelton presented a deposition of Elton Kennedy, previous owner of the Shelton Property, and testimony from Terry Ricke, Kennedy's hired hand. This evidence showed that in 2016 Kennedy had approached Chacko and Harry Dawson, Chacko's former business partner, about moving the fence to the legal boundary line. Chacko testified that he did not recall the conversation and that any authority Dawson had in the business had terminated by October 2015, thus any agreement Dawson may have made with Kennedy on behalf of the Chacko Property was invalid.

10

In April 2016, a fire destroyed part of the fence. Chacko testified he gave his ranch hand, Kent Remmers, explicit instructions not to move the fence. He said: "When the fence burned, we did not want to encroach on anybody. . . . We were trying in this area to just follow where the fence line had been." He also testified that he was worried about a herd of cattle on the Chacko Property, so his crew quickly repaired the fence and did not move it. But Kennedy's ranch hand, Ricke, testified that Remmers told him the day after they began tearing out the burned parts of the fence that Chacko and Remmers planned to wait to see if "it came up." It is unclear what Ricke meant by this statement. After hearing Ricke's testimony and reviewing Kennedy's deposition, the district court found Chacko's testimony to be credible and found no competent evidence that Chacko and Kennedy had agreed to move the fence back to its legal boundary.

Chacko testified he believed he owned the land up to the fence line, which includes the disputed tract. Chacko did not want to move the fence because he estimated it would cost $13,000 a mile to replace it, but if Kennedy had offered to pay to move the fence, he likely would have moved it. But had he known the fence was not on the boundary line before he repaired the fire-damaged parts, he would have tried to come to an amicable agreement. Still, Chacko maintained that he believed he owned the land up to the fence line and that he learned of the possible boundary issue only after they began repairing the fence. Chacko also testified that Dawson never told him of a conversation or agreement with Kennedy about the fence.

Chacko also presented evidence from Terrance Miller. He testified that the fence was in place in 1991 when he bought the Shelton Property and that the fence then appeared to be 10 years old at most. Miller believed he owned the Shelton Property up to the fence line. When asked whether the fence could have been in a different location before he bought the Shelton Property, Miller testified that he did not think so, referring to Wes Cline's practice of farming Chacko's land:

11

> "Wes plowed everything, which is not a good farming practice, and it would blow and cover the fence up. So there was a ridge there that they built the fence on throughout the years. . . .
>
> "So if the fence had been in a different location before I purchased it, there would be that ridge out in the field."

Miller also testified that he viewed the fence after its replacement in 2016 and that it seemed to be in the same location as before.

Chacko's ranch hand, Remmers, had helped replace the fence after the 2016 fire. Remmers testified that he put the fence back where the original T-posts were so the fence would remain sturdy. He also testified that, to his knowledge, there was no agreement between Kennedy and Chacko to move the fence. Remmers described Cline's farming practices and said he farmed up to the driving trail along the edge of the fence in the disputed tract.

Shelton argues that admission or recognition of doubt or uncertainty about the true boundary line impeaches a claimant's good-faith, but erroneous, belief of ownership, citing *Stark v. Stanhope*, 206 Kan. 428, 433, 480 P.2d 72 (1971). But *Stark* did not make this specific finding. Shelton cites a quote from Professor Melvin C. Poland, author of 5 Vernon's Kansas Statutes Annotated, Code of Civil Procedure, commenting on the Advisory Committee's notes about the change from the common law to the Kansas adverse possession statute. See 206 Kan. at 432-33. And the professor's commentary in *Stark* is mere dicta because the *Stark* court analyzed the appellant's claim under the "knowingly adverse" clause of the statute rather than the "good-faith belief" provision that Chacko asserts here. 206 Kan. at 433.

A person's good-faith, but erroneous, belief is not necessarily impeached by learning the true boundary line after purchase of the property. *Akers v. Allaire*, 17 Kan. App. 2d 556, 558, 840 P.2d 547 (1992); cf. *Chesbro v. Board of Douglas County*

12

*Comm'rs*, 39 Kan. App. 2d 954, 967, 186 P.3d 829 (2008) (when the County had believed in good faith for more than 15 years that it had owned the disputed strip of land, its acknowledgment that the property line was marked by a pin years after the County had acquired ownership of the property through adverse possession would not operate to destroy the County's ownership and possession.)

Chacko testified that he believed he owned the property up to the fence line. He farmed the Chacko Property up to the fence line and his ranch hand, Remmers, confirmed this. So Chacko's farming practices provided some evidence of his belief. This and the other evidence in the record provides substantial competent evidence supporting the district court's finding that Chacko had a reasonable, good-faith belief of ownership during the eight years since he bought the land.

### Cline's Good-Faith Belief

Shelton also argues that Chacko failed to show his predecessor in interest had a good-faith belief of ownership. Chacko argues that his predecessors in interest, including "Cline, the Gentry Heirs, and Beulah Cline" had a good-faith belief of ownership of the Chacko Property. But none of them asserted adverse possession. Our analysis is limited because none of the 12 individuals (Cline and his co-tenants) who could provide first-hand testimony about their good-faith belief of ownership of the land for the crucial seven-year period (2003 to 2010) testified at trial. Although Cline had 11 other co-tenants, the evidence shows that Cline was the one who mainly farmed or worked the land sold to Chacko. We thus focus on whether the record shows that Cline—Chacko's immediate predecessor in interest—had a good-faith belief of ownership.

Remmers, Chacko's ranch hand, testified that Cline's practice was to farm up to the driving trail along the edge of the fence in the disputed tract. Shelton offers no reason why Cline would have done so, absent his good-faith belief that he owned the land.

13

Miller, a predecessor in interest to Shelton, testified that he believed he owned the Shelton Property up to the fence line. When he owned the property, he believed the west boundary of his property was the boundary fence in question. But Miller is Shelton's predecessor in interest, not Chacko's, and Miller's good-faith belief fails to directly show Cline's state of mind. See *Stith*, 227 Kan. at 36-37. Still, that the prior owner of Shelton's land believed he owned the property only up to the fence line on the west accords with adjacent owner's (Cline's) good-faith belief that he owned the land up to the same fence line on the east. Miller also testified that Cline's farming practice was to plow everything, which created a ridge throughout the years that the fence was built on. The adjacent landowners' course of conduct throughout the many years evidences their beliefs.

The district court recognized the practical difficulties in this case:

"The Court clearly understands the practical difficulties in presenting testimony of the historical placement of the border fence and any previous owner's beliefs or understandings as to whether it defined the border between the properties. However, no other testimony was presented from any previous owner, of either property, that anyone believed the legal boundary of the properties to be anywhere other than the existing border fence line prior to the surveys which were obtained in 2012 or later."

It is not our job to reweigh the evidence. We find substantial competent evidence that Cline had a good-faith belief that he owned the land up to the fence. The record, viewed as a whole, shows substantial competent evidence supporting the district court's conclusion that Chacko met the requisite statutory elements for adverse possession by clear and convincing evidence.

We have long recognized that "[i]ntent is difficult, if not impossible, to show by definite and substantive proof." *State v. Lassley*, 218 Kan. 758, 762, 545 P.2d 383 (1976). "Intent is usually proven by inference arising from circumstantial evidence because direct evidence of a defendant's state of mind is rarely available." *State v. Gibson*, 311 Kan.

14

732, 742, 466 P.3d 919 (2020). Similarly, a person's belief is difficult to show by definite proof, so a fact-finder may rely on circumstantial evidence to find a person's belief of ownership in an adverse possession case. In this kind of case, which relies on the passage of time and requires tacking of one owner's belief with a prior owner's belief, circumstantial evidence may be all there is.

We find it unnecessary to reach the merits of Shelton's separate argument that the district court erroneously expanded an "exception" to the *Dotson* doctrine. See *Dotson v. Railway Co.*, 81 Kan. 816, 106 P. 1045 (1910). Shelton did not argue the *Dotson* case or raise this issue to the district court. And the district court never cited *Dotson* or any exception to it or relied on any doctrine from that case that warrants an analysis separate from the adverse possession doctrine. If an issue was not raised in the trial court, it cannot be raised on appeal. *Ruhland*, 302 Kan. at 417. The rationale behind this issue preservation rule is simple: A trial court cannot wrongly decide an issue never presented to it. See *State v. Williams*, 275 Kan. 284, 288, 64 P.3d 353 (2003). Although we recognize several exceptions to this general preservation rule, see *In re Estate of Broderick*, 286 Kan. 1071, 1082, 191 P.3d 284 (2008), Shelton does not assert an exception here. Yet the party asserting an issue for the first time on appeal must invoke an exception and explain why the issue is properly before the court. *State v. Godfrey*, 301 Kan. 1041, 1043, 350 P.3d 1068 (2015); Supreme Court Rule 6.02(a)(5) (2021 Kan. S. Ct. R. 35). We thus decline to review this issue.

Affirmed.

15