NOT DESIGNATED FOR PUBLICATION

No. 128,044

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

WILLIAM MONROE TRESTER,
*Appellant*,

v.

WAYNE VANDERFORD,
*Appellee*.

MEMORANDUM OPINION

Appeal from Allen District Court; DANIEL D. CREITZ, judge. Oral argument held May 20, 2025. Opinion filed July 3, 2025. Affirmed.

*Jacob T. Knight*, of Knight Law, LLC, of Iola, for appellant.

*Mark A. Werner*, of Law Office of Mark A. Werner, of Pittsburg, for appellee.

Before MALONE, P.J., SCHROEDER and GARDNER, JJ.

PER CURIAM: Wayne Vanderford bought a 7.4-acre tract of wooded real estate in rural Allen County under an oral contract with John and Millie Trester. Vanderford paid for the property through monthly payments but could not get John and Millie to execute a deed for him to file for the specific 7.4-acre tract. In 2020, William Monroe Trester received a quitclaim deed for the tract from his stepmother, Millie. With a cloud on his title, William Monroe Trester filed a petition to quiet title to the 7.4-acre tract of land in his name. Vanderford counterclaimed, stating he adversely possessed the 7.4-acre tract of property under a reasonable and good-faith belief of ownership. After a bench trial, the district court quieted title in favor of Vanderford, explaining Vanderford had open,

1

exclusive, and continuous use of the tract for more than 15 years under a reasonable and good-faith belief of ownership. Trester timely appeals. Upon a thorough and extensive review of the record, we find no error in the district court's findings. We affirm.

FACTUAL AND PROCEDURAL BACKGROUND

It is undisputed John and Millie, together as husband and wife, owned a tract of real property consisting of 7.4 acres in Allen County, Kansas (the disputed property or tract). John and Millie transferred the property to the John W. and Millie Trester living trust in 1995. Vanderford claimed he purchased the disputed property from John and Millie in 1997, though there was no written agreement. Vanderford asserted that John and Millie delivered a deed to him, but John withdrew the deed from the Allen County register of deeds' office after discovering the deed also included the legal description containing John and Millie's primary residence—a portion of land not intended as part of the sale. John refused to give Vanderford another deed to the 7.4-acre tract.

In April 2001, Vanderford filed an affidavit of equitable interest with the Allen County register of deeds to provide public notice of his interest in the property. The affidavit stated Vanderford's interest in the property was "subject to and by virtue of terms and conditions of Agreement for the Sale of Real Estate dated [November] 19, 1997 and held in escrow," and was for the purpose of providing public notice of his interest in the land.

John died in 2015, and Millie filed a trustee's deed transferring the tract from the trust to herself. In November 2020, Millie quitclaimed the disputed tract to Trester, who tried to sell the tract to Matthew Baker in early 2023. The sale was canceled when a title search on the tract revealed the existence of Vanderford's filed affidavit of equitable interest.

2

In April 2023, Trester filed a petition to quiet title against Vanderford, alleging Vanderford entered negotiations with John and Millie to buy the disputed property, but no agreement was finalized, and no payments were made. Trester asserted the affidavit of equitable interest violated K.S.A. 58-2254 and clouded the title to the disputed tract, hindering Trester's ability to sell the property. Trester asked the district court for a declaratory judgment, finding he was the lawful owner of the tract and Vanderford had no legal or equitable interest in it.

Vanderford counterclaimed, asserting he purchased the disputed property from John and Millie in 1997 and had sole and exclusive use of the property, which he had paid for. Vanderford specifically claimed he openly, exclusively, and continuously possessed the property since 1997 and, therefore, adversely possessed the tract under K.S.A. 60-503, as he had a justifiable belief in ownership. Vanderford's cross-petition notes he filed the affidavit of equitable interest after John and Millie refused to give him a deed to the tract he bought from them but otherwise does not specifically make a claim of adverse possession under the theory of having a knowingly adverse interest in the property.

At the bench trial in April 2024, both Trester and Vanderford each testified along with family members, neighboring landowners, potential buyers, and family friends. The district court took the matter under advisement and ultimately issued a memorandum decision finding Vanderford owned the tract by adverse possession under a reasonable good-faith belief of ownership and he knowingly adversely possessed the tract. The district court quieted title to the disputed tract in Vanderford's name. Other facts are set out as needed.

ANALYSIS

*Trester failed to preserve the issue of whether Vanderford's affidavit of equitable interest was sufficient to help establish a reasonable good-faith belief of ownership.*

Trester argues the district court erred in relying on Vanderford's affidavit of equitable interest to support Vanderford's claim he had a reasonable and good-faith belief he owned the property in dispute.

*Preservation*

Trester acknowledges this issue was not raised below, explaining (1) he had different counsel at trial; (2) he did not know the district court would heavily rely on the affidavit of equitable interest; and (3) Vanderford failed to show open, exclusive, and continuous use of the property and, therefore, Vanderford's belief he owned the property was immaterial.

Generally, a new legal theory cannot be asserted for the first time on appeal. *Iron Horse Auto, Inc. v. Lititz Mut. Ins.*, 283 Kan. 834, 845, 156 P.3d 1221 (2007). Trester asks us to review the issue for the first time on appeal under two exceptions to the preservation rule: "(1) the newly asserted theory involves only a question of law arising on" undisputed facts and is determinative of the issue on appeal; and "(2) consideration of the theory is necessary to serve the ends of justice or to prevent the denial of fundamental rights." 283 Kan. at 845.

As far as serving the ends of justice to prevent the denial of fundamental rights, Trester's arguments are unpersuasive. Trester was provided with his day in court and failed to object to the admission of the affidavit of equitable interest. We find Trester's choice to obtain new counsel for appeal and his assertion he did not know the district

4

court would heavily rely on the affidavit are insufficient to maintain his unpreserved claim on appeal.

With respect to the newly asserted theory involving only a question of law, Trester suggests the district court should not have considered the affidavit of equitable interest in assessing Vanderford's adverse possession claim because the affidavit expired under K.S.A. 58-2254. And without the affidavit, Trester argues that Vanderford could not establish he had a good-faith belief of ownership in the tract.

Trester's claim the newly asserted theory involves only a question of law arising on undisputed facts and is determinative of the issue on appeal is misplaced. Whether an individual has a reasonable and good-faith belief of ownership of certain real property is a state of mind. *Wallace v. Magie*, 214 Kan. 481, 487, 522 P.2d 989 (1974); *Akers v. Allaire*, 17 Kan. App. 2d 556, 558, 840 P.2d 547 (1992). A reasonable good-faith determination is a question for the trier of fact. *Armstrong v. Cities Service Gas Co.*, 210 Kan. 298, 311-12, 502 P.2d 672 (1972). And the facts here regarding the purchase and sale of the property were highly disputed. The district court noted that Vanderford had emphasized his affidavit of equitable interest in making his claim of adverse possession, but the court relied on the affidavit "*and other evidence*." (Emphasis added.) The district court elaborated that Vanderford, who had difficulty with reading and writing, made cash payments to John and Millie for the purchase of the property, and Trester admitted during the trial Vanderford made payments to his dad, John.

While there was contradictory evidence, the district court found Vanderford's testimony more credible, and we will not reweigh the evidence. See *Wright v. Sourk*, 45 Kan. App. 2d 860, 866, 258 P.3d 981 (2011). Trester admitted, and the district court also found, that when John received actual notice of the filing of the affidavit of equitable interest, it began a clear starting point for Vanderford's claim of openly possessing the property along with his continuous possession and use of the property. The district court

did not give significant weight to Trester's testimony that his parents refunded Vanderford the purchase price of the property and found Vanderford adversely possessed the property under K.S.A. 60-503, not under K.S.A. 58-2254. Trester failed to preserve this issue for appeal, and we decline to address the claim given our discretion not to consider unpreserved claims. See *State v. Rhoiney*, 314 Kan. 497, 500, 501 P.3d 368 (2021).

*Merits*

Trester contends Vanderford limited his claim of adverse possession to a theory based on a good-faith belief of ownership, not under a claim his use of the land was knowingly adverse, and thus the district court should have considered the claim only based on the good-faith ownership theory. The district court found Vanderford possessed the disputed tract in an open, exclusive, and continuous manner for more than 15 years and under a good-faith belief of ownership. Vanderford's counterclaim seems to indirectly assert a claim of possession in an adverse manner, and it was not unreasonable for the district court to find as much. But because we find the district court did not err in finding Vanderford adversely possessed the property under a good-faith belief of ownership, we need not address the alternative theory of possession in an adverse manner. Trester essentially asserts the district court erred in considering Vanderford's affidavit of equitable interest because it was not properly signed by the necessary parties and, according to K.S.A. 58-2254, had expired.

K.S.A. 58-2254 provides that an affidavit filed in the register of deeds' office, signed only by the claimant who claims to have an interest in real property belonging to someone else, without a written agreement signed by the party to whom the property belongs stating as much, is only good for 30 days from the filing unless the claimant filed a court action to enforce the claim. Here, there was no written agreement for the purchase and sale of real property, and Vanderford eventually filed his affidavit of equitable

6

interest with the register of deeds' office to provide notice of his claim to the tract. John and Millie did not sign the affidavit of equitable interest. Under K.S.A. 58-2254, the affidavit expired 30 days after the filing on April 3, 2001, unless Vanderford filed a court action, which he did not do. But Vanderford's claim of adverse possession under a good-faith belief of ownership did not solely rest on the affidavit.

Trester incorrectly asserts John and Millie had no reason to believe Vanderford had a claim to or belief of ownership after the affidavit expired. But John and Millie were aware Vanderford had paid for the tract as they received and accepted monthly cash payments amounting to $7,000. Trester claims the math did not add up because Vanderford claimed to pay $350 per month, beginning sometime in 1997, with a final payment of $800 for a total of $7,000, which was paid off in 2001. But Vanderford's testimony suggests he completed his payments on the tract *by* 2001, not *in* 2001. Vanderford also paid the annual property tax on the tract—something John and Millie were surely aware of. In fact, Vanderford testified he originally did not know how to pay the property tax and Millie showed him how to do so after seeing public notices of delinquent property tax payments on the disputed tract.

Trester is asking us to reweigh the evidence, something we cannot do. See *Wright*, 45 Kan. App. 2d at 866. Even if we reach the merits of Trester's claim regarding the affidavit of equitable interest, we find Vanderford had a good-faith belief of ownership of the disputed tract and the affidavit created a good starting point for the district court to rely on if not in 1997 when the oral agreement and payment schedule was agreed upon.

*Vanderford openly, exclusively, and continuously possessed the land.*

Trester asserts Vanderford failed to establish by clear and convincing evidence he openly, exclusively, and continuously used the property at issue and, therefore, failed to

7

meet his burden to establish his claim of adverse possession. Trester asks us to reverse the district court's findings and quiet title to the 7.4-acre tract in his name.

Whether a party has acquired title to real property by adverse possession is a fact question. The district court's factual findings are reviewed for substantial competent evidence, which is "evidence that 'provides a substantial basis of fact from which the issues can be reasonably determined.'" *Ruhland v. Elliot*, 302 Kan. 405, 409-10, 353 P.3d 1124 (2015). We do not reweigh the evidence, assess witness credibility, or resolve evidentiary conflicts. *Wright*, 45 Kan. App. 2d at 866. To the extent we must interpret K.S.A. 60-503, our review is unlimited. *Ruhland*, 302 Kan. at 410.

K.S.A. 60-503 states in relevant part: "No action shall be maintained against any person for the recovery of real property who has been in open, exclusive and continuous possession of such real property, either under a claim knowingly adverse or under a belief of ownership, for a period of fifteen (15) years."

A claim of ownership must be reasonable and one of good faith. *Wright*, 45 Kan. App. 2d at 865. Each statutory element must be established by clear and convincing evidence as the law does not allow a person's property to be taken by someone else "'upon slight presumptions or probabilities.'" See *Ruhland*, 302 Kan. at 410. Every presumption is in favor of the holder of the legal title to the property. 302 Kan. at 411. But "'the true owner of property, who fails to protect rights of ownership against one holding in adverse possession and manifesting the same as required by statute and for the length of time fixed thereby, is considered as having acquiesced in the transfer of ownership.' [Citation omitted.]" *Chesbro v. Board of Douglas County Comm'rs*, 39 Kan. App. 2d 954, 960, 186 P.3d 829 (2008).

The district court determined Vanderford possessed the tract openly, exclusively, and continuously in a manner knowingly adverse to the owners of record and under a

8

good-faith belief of ownership for more than 15 years. Trester did not object to the district court's finding of adverse possession under the theory Vanderford possessed the land in a manner knowingly adverse to the owners of record—a theory indirectly asserted in Vanderford's counterclaim. In making this determination, the district court explained Vanderford had paid for the property, including annual property tax; filed an affidavit of equitable interest when John and Millie refused to provide Vanderford with a deed; and physically possessed and used the property since 1997.

*Vanderford openly possessed the disputed land.*

Trester heavily relies on the fact Vanderford referred to the property as his "'hole'" and a place to "'hide out,'" claiming one cannot hide in a hole in a "visible" and "open" manner. Trester argues the only roadway into the property "was overgrown with thick briar bushes" and "[t]here were no markings, gates, or signs visible from the road" showing the property was occupied. Trester claims his predecessors in interest would not have known about Vanderford's presence on the tract unless they searched the property, and they had no obligation to do so. Rather, Trester contends Vanderford had the burden of using the tract openly to put the owner on notice he was occupying the land.

To obtain land by adverse possession, there need not be enclosures, buildings, or cultivation on the land. But the land must be used or occupied in a manner "'as to give unequivocal notice of the claim to the land, adverse to the claims of all others, and must be of such a character and so openly done that the real owner will be presumed to know that a possession adverse to his title has been taken.'" *Wright*, 45 Kan. App. 2d at 871.

Here, the district court found Vanderford used the tract by building go-kart trails and animal habitats, planting gardens and fruit trees, hunting, clearing brush, and raising bees to harvest honey. Vanderford lived off-grid on the property through much of the year in both permanent and temporary structures—usually on the back side of the tract

9

away from the road—and allowed his family to use the tract for recreational purposes. The district court also determined that, after the oral agreement to purchase, Vanderford paid the annual property tax on the disputed property, except in 2010, until Millie quitclaimed the property to Trester in 2020.

Vanderford testified he hunted on the property, turned quail loose, grew mushrooms, put up beehives to raise bees and harvest honey, camped, planted fruit trees and gardens, and placed PVC pipes through the timber to help rabbits populate. Vanderford granted his family permission to use the property. Vanderford's nephew, brother, and son testified and corroborated Vanderford's story, explaining they used the property for target practice, hunting, and raising bees and harvesting honey. Vanderford's brother testified that Vanderford lived on the disputed property for privacy and peace and quiet, planted fruit trees, and made a go-kart track. Vanderford's son explained he had been going out to the property for most of his life as his father bought the property in 1997. Vanderford's son testified his dad spent quite a bit of time out there and he had helped his father pay the property taxes. Additionally, one of the neighboring landowners testified that the Vanderfords would come out and ride four-wheelers and shoot guns.

The district court also found John entered into an oral agreement with Vanderford in 1997 for the purchase of the tract at issue. Vanderford made monthly cash payments toward the purchase of the tract for a total purchase price of $7,000. The district court noted Trester's testimony concerning the payments was inconsistent, as he first claimed there was no proof Vanderford paid for the property and later claimed his father refunded Vanderford the purchase price of the tract. The district court explicitly stated it found Vanderford's testimony more credible.

The district court also specifically found John and Millie had signed a quitclaim deed in 2001 conveying the property to Vanderford, who had paid for the tract in full by that time and who subsequently paid the property taxes on that parcel of land. But John

withdrew the quitclaim deed from the Allen County register of deeds' office because the deed included the legal description of an additional parcel of land containing John and Millie's home. And after that, John refused to provide Vanderford with a new deed, which caused Vanderford to file his affidavit of equitable interest.

The district court's findings were supported by substantial competent evidence. At trial, Vanderford testified that in 1997 he discussed purchasing the 7.4-acre tract of land from John. Vanderford testified he started making $350 monthly cash payments by taking the payment to John's house even though there was no written agreement for the sale of the property. Vanderford's last payment was a lump sum of $800 for a total purchase price of $7,000. Vanderford's testimony reflected John provided receipts for each payment; however, none were presented to the district court as they were destroyed in a house fire.

Trester asserts the testimony revealed Vanderford made the final payment in 2001 and, therefore, the math simply did not add up. But Vanderford testified he had paid off the purchase price of the property by 2001, not that he made the final payment in 2001. In fact, on cross-examination, Vanderford clarified he went to the register of deeds' office with John, Millie, and his then-wife a couple of years before that, in 1998 or 1999. So, the math adds up as it would have taken approximately 18 months to pay off the purchase price from the time of purchase in 1997 ([$7,000-$800]/[$350/month] = 17.7142 months).

Vanderford attempted to get a deed from John and Millie and, after asking multiple times, John had Vanderford's then-wife type the quitclaim deed on a typewriter as John dictated the legal description to her. Once the deed was completed, John and Millie signed it, then John, Millie, Vanderford, and Vanderford's then-wife went to the register of deeds at the courthouse to file the deed. Vanderford testified John spoke with the register of deeds' employee about filing the deed and Vanderford paid the filing fee.

John later realized the legal description in the quitclaim deed covered more than the 7.4-acre tract and included John and Millie's residence. So, John withdrew the deed. Vanderford did not know what happened to the deed or why it was not of record with the register of deeds' office. Vanderford's filing fee was never refunded. Vanderford asked John for a new deed, but John refused. Vanderford had a title company prepare an affidavit of equitable interest after providing the receipts from John establishing he had paid for the property in full.

With respect to the property taxes, Vanderford testified he originally did not know how to make the payments, and Millie informed him the newspaper published a notice of delinquent payments. Millie then showed Vanderford how to make the property tax payments, and Vanderford did so every year, except in 2010, until 2019. While "an adverse possessor is not required to pay taxes . . . , it is a proper factor to consider in determining whether a claim of ownership exists or a claim is knowingly adverse. [Citation omitted.]" *Crone v. Nuss*, 46 Kan. App. 2d 436, 445, 263 P.3d 809 (2011). Though there was contradictory evidence presented to the district court, Vanderford's testimony provided a basis from which it could be reasonably determined the tract was used openly by Vanderford and supports the district court's findings.

*Vanderford's possession of the land was exclusive.*

Trester argues Vanderford failed to establish by clear and convincing evidence Vanderford exclusively used the disputed tract. Trester contends (1) John gave permission to a friend to hunt on the property during the time Vanderford claimed to have exclusive use of the property, (2) John dumped septic waste on the property until 2010, and (3) Baker and his father inspected the property in January 2023. Trester now claims the district court failed to specify how Vanderford overcame the presumption in favor of the legal titleholder, and there was no substantial competent evidence to support the district court's finding that Vanderford proved by clear and convincing evidence he was

in exclusive possession of the disputed property. Trester asks us to reverse the district court's findings on this point.

"[T]he requisite of exclusive possession for acquisition of title by adverse possession is not satisfied if occupancy is shared by the owner or with agents or tenants of the owner." *Crone*, 46 Kan. App. 2d at 446. In *Crone*, the Crones purchased land adjacent to land owned by Fred Nuss. The Crones claimed adverse possession of Nuss' land by cutting and baling Johnson grass, disking with tractors, and planting crops on the disputed property. Nuss ultimately requested the Crones stop trespassing on his land.

At trial, the evidence showed the Nusses visited the disputed property and let the property remain a wildlife sanctuary rather than farm the land. But the district court found both parties were jointly using the disputed land for hunting. The *Crone* panel found there was "no indication from the [district] court's findings that the Crones' possession amounted to an ouster of Nuss or that the Crones excluded Nuss in any manner." 46 Kan. App. 2d at 446.

The panel explained any contact by the owner and titleholder of the land, as well as those given permission to use the disputed land, "must be taken in context with the type and nature of the property." 46 Kan. App. 2d at 445. That is, "[a]ctions necessary to constitute adverse possession ''are relative to the type and nature of the property and surrounding circumstances, taking into consideration the particular land, its condition, character, locality, and appropriate use.'" [Citation omitted.]'" 46 Kan. App. 2d at 445-46.

Here, the district court acknowledged Vanderford's open use of the tract and that he exclusively possessed the property with all his activities there. The court also found the activities of his family and friends and the occasional use of the property by adjourning landowners did not defeat Vanderford's exclusivity claim because they were aware of Vanderford's possession of the tract.

13

Vanderford testified he placed purple posts on the tract because he had an issue with "road hunters" who would drive by his property, shoot a deer, throw it in their vehicle, and drive off. K.S.A. 32-1013(a) states: "Any landowner or person in lawful possession of any land may post such land with signs stating that hunting, trapping or fishing on such land shall be by written permission only." Marking a tree or post with purple paint around the posted area also indicates written permission is needed to hunt, trap, or fish on the land. K.S.A. 32-1013(b). Such evidence supports the finding that Vanderford exclusively possessed the property, and minor intrusions on his land by others without permission does not defeat his exclusivity claim that started in 1997.

*Vanderford continuously possessed the land for 15 years.*

Trester next contends Vanderford failed to establish by clear and convincing evidence he possessed the land continuously for 15 years and lists the contradictory facts suggesting Vanderford did not continuously use the property. Trester is asking us to reweigh the evidence, which we cannot do. *Wright*, 45 Kan. App. 2d at 866.

The district court found Vanderford purchased the disputed tract in 1997 and continued to occupy the property until at least 2023—well over 15 years. Vanderford paid most of the property tax, other than one year—in 2010—until Trester received his quitclaim deed from Millie in 2020.

Vanderford testified he began occupying the land in 1997 and, at that time, started having campouts on the tract. In the average year, Vanderford explained he was on the property for more than three quarters of the nights each spring, summer, and fall. Vanderford's son stated he and his family have continuously used the property since 1997 and still used the property at the time of the trial. Despite contradictory testimony, the district court's findings were supported by substantial competent evidence.

Vanderford's testimony—which the district court found credible —supports its findings he used the tract, under a good-faith belief of ownership, openly, exclusively, and continuously for more than 15 years.

Affirmed.